C. W. MOORE, APPELLANT, *v.* C. S. MILLER, RESPONDENT.

PROMISSORY NOTE TRANSFERRED WITHOUT INDORSEMENT.—Minear, being indebted to the bank of Idaho, upon his promissory note, in consideration of an extension of time thereon to Minear, Miller executed his promissory note to the bank for the sum of Minear's note, with the understanding that both notes should be delivered up when either was paid. Moore, a stockholder in the bank, received both notes, with notice of all the facts, as a part of his share of the bank assets. The Miller note was regularly indorsed to him; the other was delivered without indorsement: *Held,* 1. That Miller's liability was not that of an indorser upon the Minear note, but that it grew out of an independent contract to pay a certain sum at a fixed time, upon conditions expressed in the agreement; 2. That Moore became the owner of the Minear note without indorsement, and that he had the right to maintain his action upon the Miller note.

APPEAL from Casco County.

The facts are stated in the opinion of the court.

*B. Witten, N. H. Gates* and *W. W. Thayer,* for appellant.

*W. H. Effinger,* for respondent.

By the Court, SHATTUCK, J.:

The liability of the respondent, Miller, in this case must be ascertained by the writing offered in evidence, including

the note sued on.   These writings show that Minear made
a promissory note to the First National Bank of Idaho, for
four thousand dollars, bearing interest at two per cent. a
month, and due August 4, 1874.   About the date of the
maturity of this note, an extension of the time of payment
was sought, and Miller was requested or asked by letter
from the cashier of the bank to indorse this note, which by
letter he consented to do.   The cashier then sent to Miller
the note sued on in blank, inclosed in a letter wherein this
proposition was made to Miller.   "If you will sign and
return the note (the one sued on), I will grant the time
asked for and deliver up both notes when either is paid,"
(referring to the Minear note upon which the time asked
was granted).   Miller signed this note and returned it to
the cashier, and stated in the letter inclosing it, in sub-
stance, that he gave this note with the understanding con-
tained in the cashier's letter quoted from above.

There was also further evidence in the case tending to
show that Moore, at the time of this correspondence, was
cashier of the bank and a stockholder in the institution, but
since that time he had withdrawn and had received in his
settlement with the bank and as part of his share of assets,
the Minear note and the note sued on—both representing,
in fact, one debt and entitling the holder to payment of
only one of the sums of money specified in them.   The note
sued on was regularly and properly indorsed by the payee;
but the Minear note, through some oversight, was delivered
without any indorsement whatever by the payee.   The
Minear note was delivered to the plaintiff by the payee for
a valuable consideration, along with the note sued on, and
the plaintiff was the sole party interested in the money due
upon these notes.

With this testimony before the court below, it was not
error to instruct the jury as a general proposition that parties
to promissory notes may, as between themselves, make a
separate contract as to the liability assumed by which their
rights are to be governed, or they may make a contract as
for an indorsement upon a separate piece of paper and
attach the same to the note.

But the evidence in this case makes Miller's undertaking amount to something more than is implied in this general proposition of law. The writings introduced in evidence, fairly construed, mean simply this, that Miller, in consideration of forbearance to Minear, promised to pay, not Minear's note, but a certain definite sum of money at a certain time, with a condition, however, that if Minear's note should be paid before the day fixed, then this promise should be void. The only satisfaction or fulfillment of this promise, or the only defense to this action, upon this view of the testimony, which can avail the respondent is payment of the one or the other of these two notes, and in so far as the instruction given by the court to the jury conveyed to them a view of the matter different from that just expressed, it was erroneous. The second instruction given, to which exception was taken, and the instruction asked by plaintiff and refused, both refer to the same point, and may be considered together. The instruction given was this: "If you find that Miller executed the note of date August 4, 1874, for four thousand and one hundred and eighty-six dollars and sixty-seven cents to the First National Bank of Idaho, as collateral security for the payment of the Minear note, sixty days after the maturity of the Minear note, you must also find, before the plaintiff can recover, that he is the owner and holder of both the notes, and as they are negotiable promissory notes, that they were transferred to him by indorsement; for in no other way will the transfer convey the legal title so as to permit the plaintiff to recover in this action."

The instruction asked and refused was this: "If you believe from the evidence that plaintiff is the owner and holder of the Minear note, that will be sufficient for plaintiff to maintain an action against defendant on his note without the indorsement of the Minear note."

Two propositions are asserted by these constructions: one that the plaintiff must be the owner and the holder of both notes, in order to maintain this action; the other that the ownership of the Minear note, for the purposes of the action, must be created and exist by indorsement of the

payee's name, and not otherwise. The first of these propositions need not be considered, for the decision of the second will dispose of the case.

The question then, is, can Moore become the owner of the Minear note, it being payable to the order of the payee without the indorsement of the payee? The court below held, and the counsel for respondent here contend that he cannot, and we are cited to a provision of our statute, and to elementary works on bills and notes, besides several reports, that employ language mainly the same as that used in the instruction given. But those cases and rules have reference to purely legal titles, to negotiable paper, and legal remedies thereon, as enforced under the law merchant. It does not follow from these citations that a party who pays valuable consideration for a note or bill, payable to order, and takes a transfer of it by delivery only, without indorsement, may not be deemed in law for many purposes the owner. By such a transfer, it is true, the holder does not take the paper clothed with all the rights of an indorsee of negotiable paper, transferred in the usual manner and course of business. He nevertheless could, under the old law, sue upon it in the name of the payee, and was so far recognized as owner as that he might lawfully collect and receive for his own use the money due on it; but, different from a regular indorsee, he would doubtless be subject to the equities subsisting between the maker and the payee. Under the New York code, and it is presumed wherever that code has been adopted, such a note payable to order may be transferred by delivery without indorsement, so as to vest the property in it in the purchaser and holder, and to entitle the holder to sue upon it in his own name. (Edwards on Bills, 286; 11 Barb. 620; 12 How. Pr. 166.) And it would seem that such a holder of a note for which he has paid value, would have a good, equitable title that would sustain a suit to enforce collection, and to establish his right to the money against both the maker and the payee.

The code of this state has preserved to a considerable extent the distinction between law and equity jurisdiction and modes of proceeding; and whether or not Moore could

maintain an ordinary action at law under our code upon the Minear note on the ground of his being the real party in interest, it is not necessary to determine at this time. But, beyond question, the evidence in this case tended to show facts from which the legal inference is that Moore has title to the Minear note and the sole right to receive the money due upon it and to cancel and deliver it up; that he could collect it, if not by action at law in his own name, certainly by action at law in the name of the payee, or by suit in equity in his own name against the maker and payee.

Having such a title to the Minear note and a perfect legal title to the note sued on, we think Moore can maintain this action without having the indorsement of the payee upon the Minear note.

It follows that there was error in the instructions given and in refusing the instructions asked, and the judgment will have to be reversed and a new trial ordered.