### SEELEY v. REED.

*(Circuit Court, D. Oregon. July 28, 1886.)*

1. PROMISSORY NOTES—AGREEMENT TO DELIVER NOTES OF CORPORATION.
    An agreement to deliver the notes of a corporation does not imply that the party agreeing to make such delivery shall indorse them at all, and if, for any reason, they are made payable to his order, he is only required to indorse them so as to pass the legal title to them, which may be done by an indorsement "without recourse."

2. SAME—INDORSEMENT "WITHOUT RECOURSE."
    The effect of an indorsement of a promissory note "without recourse" is to transfer the legal title to the same to the indorsee, and the indorser also thereby undertakes that the instrument is valid, and what it purports to be.

3. SAME—PARTY CONTRACTING TO DELIVER NOT A TRUSTEE.
    A party who agrees to deliver to another one-third of the notes he may receive from a certain corporation on a loan thereto of $150,000, on the payment of the latter's note for $50,000, does not thereby become a trustee of such other person, and *prima facie* he has performed his contract when he delivers to the latter the notes of said corporation of the face value of $50,000.

Suit for an Account and an Injunction.

*Thomas N. Strong*, for plaintiff.

*George H. Williams*, for defendant.

DEADY, J.    This suit is brought by the plaintiff, a citizen of Ohio, against the defendant, a citizen of Oregon, for an account of a loan of $150,000 heretofore made by the defendant to the Oregon Iron & Steel Company, an Oregon corporation, and to enjoin him from selling or disposing of the securities received therefor, or any portion of the 361 shares of the stock of said corporation heretofore delivered by the plaintiff to the defendant, as security for the payment of his note of $50,000 given to the defendant on March 27, 1884, on an

agreement that he should receive one-third of the securities obtained on said loan, on the payment of said note. The case was heard on the bill and answer. The plaintiff expressly waived the oath of the defendant to his answer. Counsel, however, insist that the defendant cannot thus be deprived of this privilege, and cites to that effect *Clements* v. *Moore*, 6 Wall. 314. That case was decided in 1867, while rule 41, as amended in 1871, gives the plaintiff the right to waive the oath of the defendant to his answer in whole or in part; but, on a hearing on the bill and answer, the latter, whether under oath or not, is admitted to be true, as if the hearing was on a demurrer thereto, and so the amended rule provides.

The suit grows out of a contract made by the parties on March 27, 1884. They were then in New York, and the plaintiff was a stockholder in the Oregon Iron & Steel Company, of which the defendant was president. The writing recites that Reed "is willing and is about to advance or loan" said corporation, including the amount heretofore loaned or advanced to it, the sum of $150,000; that Seeley "is willing and desires to obtain an interest of $50,000" in said loan, and to that end has given his note for that amount to Reed, payable in two years, with interest at 7 per centum per annum, at the banking-house of Ladd & Tilton, and has "delivered, as collateral security for said note and the interest thereon, 361 shares of the capital stock, full paid," of said corporation; in consideration whereof Reed thereby agrees, on the payment of said note, to redeliver to Seeley said shares of stocks, "together with one-third of said bonds, stocks, notes, or other securities," as he may obtain from said corporation, "in consideration of his said advance of $150,000," and Seeley thereby authorizes Reed, in default of payment of said note, "to sell or dispose" of said 361 shares of stock, and the said one-third of the securities received from said corporation, subject, however, to the stipulation that, if the proceeds of such sale or disposition are not sufficient to pay said note at the maturity thereof, Seeley shall not be further liable thereon, but the same shall be surrendered to him; and, in consideration of the premises, Seeley agreed to act as the general manager of the corporation for the period of two years, at a salary not exceeding $3,000 per annum.

On July 29, 1884, the plaintiff commenced a suit against the defendant for a rescission of this contract, on the ground that he had been induced to enter into it, to his injury, by the fraudulent misrepresentations of the defendant. The case was finally heard on the bill, answer, and replication thereto, and the evidence of the plaintiff; when the court, having found the allegations of the bill in this respect to be altogether untrue, on November 2, 1885, dismissed the bill, with costs. 25 Fed. Rep. 361.

On March 30, 1886, the plaintiff offered to pay at the bank of Ladd & Tilton the sum of $58,000 on said note and contract, which the bank, not having either of said papers, declined to receive; and

on the same day the plaintiff informed the attorney of the defendant —the latter being absent in California—that he had tendered the sum of $57,039.16 in payment of said note at said bank; whereupon said attorney proposed to turn over to the plaintiff, in pursuance of said contract, two notes of said corporation, payable to the plaintiff's order, the one for $20,847.91, dated October 23, 1884, and the other for $30,000, dated June 16, 1884, and to assign to him as much of an open account, held by the defendant against said corporation for money advanced thereto, as would, with said notes and the interest thereon, make the sum of $57,039.16; and also to deliver to him the certificate for said 361 shares of stock, and the plaintiff's said note, as soon as the said papers could be sent to San Francisco, and returned with the necessary indorsements and assignments thereon; which proposition was acceded to by the plaintiff, and the computations of interest made, and the papers forwarded to San Francisco for indorsement and assignment; that on April 13th the defendant, by his attorney, deposited with Ladd & Tilton said two notes, duly indorsed "without recourse," and an order on said corporation in favor of the plaintiff for $161.39; the same being the one-third of the securities received by the defendant for the $150,000 advanced by him to said corporation as per the contract of March 27, 1884; also the certificate for said 361 shares of stock, and note of $50,000, with instructions to said Ladd & Tilton to deliver to said plaintiff, or his order, said papers, upon the payment to them for the defendant of said note of $50,000, amounting, on March 30, 1886, to the sum of $57,039.16; and notified the plaintiff thereof in writing, and thereby tendered to him said papers in fulfillment of the defendant's part of the contract of March 24, 1884, and demanded payment of the plaintiff's note according to the tenor and effect thereof.

To this notice and tender the plaintiff replied in writing on the following day, saying: "My tender to you of the amount of my note and interest, made on March 30th last was unqualified, and I am keeping it good, and your money is ready for you any time. You should return my note, and deliver to me, without qualification or restriction, the notes and securities you promised. This you have not done, and do not offer to do,"—the "qualification" and "restriction" referred to being, as was admitted on the argument, the "without recourse" clause in the indorsement of said corporation notes by the defendant.

On April 22, 1886, the defendant, by his attorney, wrote the plaintiff that, in consequence of a conversation between them in which it was suggested that there was nothing to show in the papers tendered to the plaintiff that the corporation notes and account included therein had not been paid, he had, to obviate such objection, without admitting the validity of it, deposited with Ladd & Tilton the certificate of the secretary of said corporation that no payments had been made on such notes and accounts; and "I hereby further notify

you that unless your note to me of $50,000, dated March 27, 1884, is paid within three days from the date hereof, according to its tenor and effect, I shall take steps to enforce the collection of the same, as provided in my agreement with you of the twenty-seventh of March, 1884." The certificate of the secretary, dated April 22, 1886, a copy of which was inclosed in the letter of the defendant, states, in effect, that no payments had been made on either of the notes in question, and that there is due Reed from the corporation, "on open account, the further sum of $33,126.35, for money advanced." To this the plaintiff replied on the following day, claiming, in effect, that the defendant had undertaken to make an investment of $150,-000 in the securities of the Oregon Iron & Steel Company, one-third of which was for the benefit of the plaintiff; and that, as his trustee, the defendant was bound to make a showing of the results of the investment, and that the notes in question are actually one-third thereof, and are "good and valid claims" against the corporation. This ended the correspondence between the parties. The plaintiff did not accept the papers tendered him, or offer to pay his note, but, on April 24th, brought this suit, without bringing his tender into court.

The bill states the offer of the plaintiff to pay his note on March 30th, and alleges that the defendant refused to perform the contract on his part, and deliver up said note and stocks, or any of the securities received on said loan, or to furnish any account thereof, and is threatening to sell and dispose of the same, to the great and irreparable injury of the plaintiff, that "cannot be compensated for in money damages." It appears from the answer, and there is no doubt about the fact, that at the date of the contract Reed had already advanced to the corporation over $95,000 of this loan, and that that fact, and all the circumstances of the transaction, down to and including the making of the notes to the defendant, and the state of accounts between him and the corporation, were and are as well known to the plaintiff as to the defendant.

From this statement of the case it is evident that this so-called tender of March 30th was a mere make-believe, and intended for effect. When the defendant's attorney heard of it, and expressed his willingness to accept it, as soon as the papers could be properly indorsed and assigned, no quibble was made about the nature of the indorsement, or the propriety of a report from the defendant as the supposed trustee of a joint investment; but when, on April 13th, the notes of the corporation were tendered to the plaintiff, duly indorsed "without recourse," objection was first made to this "qualification" or "restriction." Now, the plaintiff had no right to any other indorsement. Reed did not agree to give him the corporation notes secured by his own unqualified indorsement. He simply agreed to give him one-third of the notes he received from the corporation, without any indorsement whatever. Seeley having the option to pay his note and receive the corporation notes, or forfeit his stock pledged as collat-

eral, Reed could not safely take any of the corporation notes in the former's name. From the nature of the case he was compelled to take them payable to his own order, and await Seeley's action. And when the latter signified his readiness to pay his note, and take the securities, all that Reed was required to do, under the circumstances, was to indorse them so as to pass the legal title to Seeley, without in any manner making himself personally liable for their payment; and this was properly done by adding to his name thereon the words "without recourse." By this indorsement, however, Reed undertook that the notes were what they purported to be,—the valid obligations of the Oregon Iron & Steel Company for the sums stated therein. 1 Daniel, Neg. Inst. § 670. More than this the plaintiff had no right to ask, and his having done so, under the circumstances, is proof that he was merely playing a part.

But in the letter of April 23d this objection is apparently abandoned, and the plaintiff assumes that the defendant has been acting in this matter in the high character of his trustee, and wants a showing as to what he has received from the corporation for this loan of $150,000; and, in a roundabout way, suggests, if not insinuates, that possibly he might have taken the corporation paper at a discount, and, if so, he wants to know it, and have his share of the benefit. Of course, Seeley is entitled, on the payment of his note, to the full one-third of all the evidences of debt that Reed obtained from the corporation for this loan. But there is no presumption that they amount to more than the sum loaned. The transaction was not a purchase of the corporation paper in the market at a discount, with $150,-000. It was simply an advance to the corporation from time to time, by the president thereof, of what amounted in the aggregate to $150,-000, and taking its notes therefor, not as a speculation, but for the purpose of tiding the corporation, in which both parties were interested, over a financial difficulty. And no one knows any more about the transaction than the plaintiff does. The history of it is contained in the corporation books, with which he is familiar, and which were kept during the greater portion, if not the whole, of this period, by his particular friend and business associate. And yet he dares not say in his bill, and does not say in this correspondence, that Reed got one dollar more in notes and accounts from the corporation than the amount of the money advanced to it. On the other hand, Reed offers these notes and this account as the one-third of what he got for the loan. By a necessary implication he asserts that they are one-third in value of what the corporation gave for the $150,000 advanced to it, and I see no reason to doubt the truth of his statement. The refusal to pay the note on this flimsy pretext furnishes further proof, if any is necessary, that the plaintiff is not acting in good faith in this matter; and this is further confirmed by the fact that he has not kept his tender good by bringing the amount into court.

The plaintiff is not entitled to any relief under this bill, and the same is dismissed, with costs.