Pavey vs. Stauffer.

---

## No. 11,029.

### FRANCIS M. PAVEY VS. I. H. STAUFFER.

1. Notwithstanding a negotiable promissory note may be executed and made payable at a future date to the order of the payee, only as collateral security for a running account of the maker with the payee, the fact of it having such future and contingent consideration does not make same liable to equities between said parties in case the payee shall have assigned same to another holder for value before maturity.

2. It can not affect the negotiability of a note that its consideration is to be hereafter realized, or that, from some contingency, it may never be enjoyed. Any one having sufficient confidence in another to give his written obligation for something to be given or enjoyed hereafter is at liberty to do so, and the maker can not censure any future holder for having purchased it; for it was the faith of the maker in the payee that he would execute his promise and allow no obstacles to defeat it that created the note and gave currency to it.

3. A transfer before maturity of a piece of commercial paper, not endorsed at date of transfer, acquires an equitable but not a legal title thereto; and the *subsequent actual* endorsement thereof *before maturity* does not operate the exclusion of equities between the maker and payee, of which the transferee has had notice in the meantime.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Henry L. Lazarus* for Plaintiff and Appellant.

*Walter D. Denégre* for Defendant and Appellee:

When a promissory note has been delivered in pledge to a third innocent party for value, and before maturity, and without notice, the pledgee is entitled to retain the pledge notes until payment and to proceed by suit and foreclosure of the mortgage securing them to enforce payment.

Where notes are made payable to the pledgor, and they are delivered to the pledgee without the pledgor's endorsement, no claims of equities as between the maker and the payee-pledgor will avail as against the pledgee, if, at the time the notes were delivered to the pledgee, they were delivered as endorsed, or with the intention or promise of endorsement.

The delivery of the notes with the understanding or intention of endorsing, or agreement to endorse, are the only essential elements; and where delivery has taken place and the intended endorsement omitted, equity looks upon that as done which ought to be done. Hughs vs. Nelson, 29 N. J. Equity, p. 549; Daniel's Negotiable Instruments, Vol. 1, p. 865.

If an endorsement is intended, but omitted by mistake or accident, it may afterward be compelled by suit in equity. Randolph on Commercial Paper, Vol. 2, p. 450; Daniel, Vol. 1, Par. 745; Randolph, Vol. 2, p. 349.

If a bill or note is transferred without endorsement, but the transfer is made with a promise to endorse, or the endorsement has been omitted on account of some accident, mistake or fraud, the subsequent endorsement will relate back to the time of the transfer, and will shut off all equities as effectually as if it had been made at the same time. Tiedeman on Commercial Paper, Par. 348, p. 410.

An endorsement at any time before suit brought, whether before or after maturity, cuts off the right of the maker or acceptor to plead set-off; for a plea of set-off is not an equity. Daniel, Vol. 2, p. 453; Tiedemann, 348, p. 410.

Under the Louisiana law, especially where an unendorsed note is delivered with a written act of pledge, such pledge or pawn so made, without further formalities, shall be valid as well against third persons as against the pledgors thereof, if made in good faith. C. C., Art. 3158; Jules Ducasse vs. J. C. Keyser and Hugh McKenna, 28 An. 419.

The opinion of the court was delivered by

WATKINS, J. The object of this action is the recovery of possession of two promissory notes, in capital aggregating about $6000, which were executed by the petitioner to the order of J. B. Lallande, payable at a future date, and presently in the possession of the defendant.

Petitioner's averment is that J. B. Lallande was, at the time of their execution, his factor and commission merchant, and they were furnished to him as collateral security for his current and running account.

That they were discounted and the proceeds thereof placed to his

credit. That from time to time during the cotton season he made shipments of cotton to Lallande, and when some was sold the proceeds were placed to his credit on open account, just as the proceeds of the notes had been previously. That against these assets in the hands of Lallande, he drew drafts and orders from time to time as suited his convenience and the wants of his business as planter and country merchant.

His further claim is that subsequently Lallande failed in business and made a cession and surrender to his creditors, and that at the time there was upon his commercial books credit in his favor to the amount of $4992.28, and that consequently the notes were only bound to him for the difference between that sum and their face value, to-wit, $1492.47; and that upon the payment of that sum he is entitled to the restitution and surrender thereof.

He further alleges that ·the defendant received said notes from Lallande as a pledge, or collateral security for his indebtedness, but without right or authority so to do, and without petitioner's knowledge or consent. That by virtue of said pretended pledge defendant acquired no right or title whatever to said notes, they being petitioner's property, and that he was entitled to possession of the same upon payment of the blance due, which sum he tendered and offered to pay upon the surrender thereof to him. That the defendant's pretended acquisition of said notes was *mala fide*, and that this appears by a simple inspection of the notes and endorsements thereon.

The salient facts of this case are in accord with the foregoing averments, except in one or two *important* particulars. The exceptions are: (1) That on the notes and their endorsement there is no evidence of *mala fides* on the part of the defendant, and no proof of it furnished by the record; and (2) defendant's title is evidenced by a written act of pledge signed by Lallande, on the 25th of March, 1889, the maturity of the notes having been *previously* extended by the plaintiff to the 25th of February, and they are consequently not due at the time.

The proof discloses that Lallande accidentally omitted to endorse his name upon the notes at date of their being pledged to the defendant, but that he, subsequently to his cession and surrender, placed his name upon them, with the knowledge and consent of the defendant, but without that of the plaintiff, who remained uninformed of the transaction throughout.

The pertinent recital of the act of pledge is as follows, viz.:

"Having executed a promissory note, dated New Orleans, March 25, 1889, for $9000, payable * * * to the order of I. H. Stauffer, on the 16th of February next, 1890, * * * *I do hereby pledge, pawn and deliver to said I. H. Stauffer and his assigns, as collateral security for said note,* * * the following," that is to say the two notes in controversy. The act then proceeds as follows, viz.: "In default of payment of my said note, principal and interest, at maturity, I do hereby authorize said I. H. Stauffer, or his assigns, to sell or cause to be sold said collaterals, at public or private sale, * * * and to apply the proceeds * * * to the payment in part or whole of my before mentioned note."

It is in proof, further, that at the time of the execution of the act of pledge it was within the contemplation of the parties that Lallande should formally endorse the notes, and that he subsequently placed his endorsement upon the notes for the purpose and with the expectation of thereby remedying the defect. The evidence satisfies us, as it satisfied the district judge, that there was neither fraud nor bad faith in the transaction in so far as the defendant, Stauffer, is concerned.

Lallande is not a party to this suit, nor is his syndic a party; yet it is manifest that he had a real and actual interest in the notes to the extent of $1492.47, and his creditors have at this time. This is the plaintiff's admission.

Under this state of fact, has plaintiff a case entitling him to relief at the defendant's hands? From the foregoing statement, it is apparent that either the plaintiff must lose $4992.28, or the defendant very nearly that sum, inasmuch as other collaterals enumerated in the act of pledge have comparatively little value.

We have, therefore, a case in which one of two innocent parties must suffer; and equity requires that the one whose *voluntary* act put it in the power of another to inflict the injury must sustain the loss, unless there is some precept of *positive* law to the contrary.

It is certainly true that, upon plaintiff's own statement, Lallande had the legal possession of the notes, and the right to discount them and convert them into proceeds. It is equally true that when thus discounted, plaintiff had the right to draw, and did draw, against the same. By so doing he evidently placed the notes, collateral for

his account though they were, beyond his control, until he covered his drafts by shipments and sales of cotton.

But this the plaintiff has not done.

We need not go further or do more than cite our decision in Bank vs. Cason, 39 An. 865, as governing and controlling the question under consideration. From an examination of that case it appears that the State National Bank was the holder of defendant's note, by transfer in due form, before maturity. That defendant executed and delivered same to his factors and commission merchants, as collateral security for plantation supplies advanced and to be advanced, and that by shipments of cotton to the latter his supply account was *completely paid*, and *nothing* was due by him on account for which the note could longer be held as security.

That at the time of the assignment of the note to the bank it was informed of its *consideration*—that is to say, that it was *only collateral* paper—but it was not informed that the defendant's indebtedness to its transferror had, in point of fact, been, at the time, completely paid.

On this state of facts the opinion proceeds, and the court say:

" The consideration of the note was a lawful and valuable consideration. . * * * As the consideration of the note was a valuable one, plaintiff could not have been affected prejudicially by the knowledge of it. If the consideration be lawful, the knowledge of that consideration can, of itself, have no bearing on the rights of the transferee.

" It is the *knowledge of the failure of the consideration*, or of secret equities between the original parties thereto, that would prevent recovery thereon, as between said parties.

"The right of the plaintiff to recover on the note is the more apparent when we consider that, in this instance, in accordance with the mode in which business is usually conducted between commission merchants and planters, this note, we must infer, was executed for the purpose of being negotiated, that, by means of such negotiation and discount of the note, a sufficient sum might be realized and placed to the credit of the defendant to enable his merchants to furnish the promised advances."

The court in so deciding followed the precedent laid down in Sadler vs. White, 14 An. 177. In that case the court said:

"Plaintiff received the note before maturity, and before a failure

of consideration. Even if it was known to him, taking it that the consideration was *future and contingent*, and that there *might* be offsets against it, this would not make him liable to the equities between the defendants and payee.

"It can not affect the negotiability of a note that its consideration is to be *hereafter realized*, or that, from some contingency, it *may* never be enjoyed. Any one having sufficient confidence in another to give his written obligation for something to be given, or enjoyed hereafter, is at liberty to do so, and the maker can not censure any future holder for having purchased it and for seeking to enforce it, for it was the faith of the maker in the payer, that he would execute his promise and allow no obstacles to defeat it, that created the note and gave currency to it."

That opinion is exceedingly clear and well expressed, and applies to this case with peculiar force. But neither of the two cases cited are as securely founded in equity as the instant one is for the defendant—the account of the plaintiff being paid, in part only, and defendant having acquired the pledged notes in the usual course of business, and without knowledge of their consideration.

On the other and remaining feature of the case little need be said. The absence of any *written* endorsement on the notes, at time of their being pledged to the defendant, is not of itself a badge of fraud or bad faith on the part of defendant. The act of pledge formally and circumstantially recites a transfer and pledge of them to the defendant. It evidences a *complete agreement* of the parties to the transfer. They were pledged for a valuable consideration.

The pledge was the controlling and dominant act of the parties, to which the written endorsement, clearly contemplated, was merely subsidiary.

This being the situation, it is not readily perceived what impropriety there was in Lallande supplying the ellipsis by supplementing the evidence of assignment in the act of pledge by the addition of his signature on the notes.

Text writers are agreed that under such facts "such subsequent endorsement will relate back to the time of the transfer, and will shut off equities as effectually as if it had been made at the same time." Tiedeman on Com. Pap., p. 410, citing: Southard vs. Porter, 43 N. H. 380; Haskell vs. Mitchell, 53 Mo. 468; Watkins vs. Maule, 2 Jacob & W. 237; Weeks vs. Medler, 30 Kan. 57.

The same principle is recognized by Randolph. 2 Randolph on Com. Pap., p. 450, citing: *Ex parte* Gunning, 13 Ves. 206.

The same principle is recognized by Daniel. 1 Daniel's Neg. Ins., p. 252, see 260, citing: Hersey vs. Elliott, 67 Mo. 527.

But what makes defendant's case much stronger is that the assignment of the notes by means of the act of pledge passed an interest in the notes, and created a case not depending upon a *mere latent intention to endorse* resting upon parol evidence exclusively.

We are of the opinion that the judge of the District Court entertained a proper appreciation of both the law and evidence and decided the case correctly.

Judgment affirmed.

## ON APPLICATION FOR A REHEARING.

This application presents two questions for our consideration—one of fact and the other of law—which, being resolved in favor of the plaintiff, necessitates a change in our decree, and that judgment be pronounced in his favor.

The two propositions are (1) one of *fact*, whether or not the defendant, Stauffer, was advised of the existence of equities between the plaintiff, Pavey, and Lallande, payee of the two notes in controversy, antecedent to the *actual* endorsement thereof—said endorsements having been thereon placed *before maturity;* and (2) one of *law*, whether, Stauffer having been so advised, the *actual* endorsement of the notes *before maturity*, though subsequently to his having been thus advised, *relate back* to the time of the *original transfer*, and shut off equities of the plaintiff as effectually as if it had been made at the time of the equitable assignment—the proof disclosing that an endorsement of the notes was impliedly promised at the time of transfer, and omitted through inadvertence.

(1) A careful examination has satisfied us that the defendant, Stauffer, was advised by the plaintiff, Pavey, of the existence of equities between himself and the payee, Lallande, prior to the *actual* endorsement of the notes.

The statement of Pavey, as a witness, is direct and positive to that effect; and the real and actual existence of such equities, and for a large amount, is undeniable. This statement is supported by Lallande's schedule in his insolvency proceedings, and that the object of his visit to New Orleans at the time was to examine those sched-

ules with reference to his notes and account with Lallande. That, upon ascertaining the situation of affairs, and that Stauffer was in possession of his notes, as pledgee, he called upon him and discussed the matter with him fully, disclosing the nature, character and amount of his equities against Lallande.

This statement is not denied by Stauffer, but he declares that he has no recollection of having seen Pavey at all, and, inferentially, no recollection of the conversation that Pavey detailed.

But the facts and circumstances related by Pavey have seriously impressed us with their correctness, and they fully discharge the burden of proof that the law imposes upon him. For, assuming as a fact that Pavey had large offsets against his notes, what more likely than that he should have felt anxiety about the matter, upon ascertaining that Lallande had made a judicial surrender to his creditors; and that he should have looked into the matter at once. Finding that Lallande had pledged his notes to Stauffer, what more likely than that he should have called upon the latter and made a full and complete statement of his claim, and the amount of the credit he was entitled to on the notes he held. Upon the contrary, it would have been most singular and unusual if he had pursued a different course.

In thus deciding we expressly disclaim any intention of placing upon Stauffer the imputation of swearing falsely. On the contrary, it is our deliberate conviction that his recollection of the occurrence that is related by Pavey had failed him; or that, placing full reliance on his pledge and his possession of the notes, he was unmindful of what Pavey *did say*, and consequently his remembrance of his visit became obscure and doubtful.

In confirmation, however, of the fact that *Pavey did visit Stauffer*, the record furnishes evidence that, at about the date indicated by Pavey, the two notes were sent by Stauffer to one Levy to be copied; and that the copies showed the notes to have been *without endorsement at the time*, and upon what *other* theory can this circumstance be accounted for than that Pavey and Stauffer had had an interview in reference to them, and that Pavey finding them to be without endorsement desired to have copies made, in order to preserve the evidence of that fact for future use.

(2) On the question of law we placed reliance upon the opinions of text writers, and particularly upon that of Mr. Tiedeman in his work

on commercial paper, to the effect that a subsequent endorsement will relate back to the time of transfer and shut off equities as effectually as if it had been made at the same time—merely reiterating such authorities as those writers had collected without further comment.

And upon their *dicta* we said in our opinion that " the pledge was the controlling and dominant act of the parties, to which the written endorsement, clearly contemplated, was merely subsidiary. This being the situation it is not easily perceived what impropriety there was in Lallande supplying the ellipsis by supplementing the evidence of assignment in the act of pledge, by the addition of his signature on the notes."

But the contention of plaintiff's counsel is, that while this is perfectly true in respect to the *mere transfer* of the notes, passing title to Stauffer, pledgee, yet it is not true with respect to the *effect* of such subsequent endorsement—passing such a title as would exclude equities of the maker against the payee.

A careful examination of the authorities has satisfied us that *a subsequent endorsement* of a piece of commercial paper, *after maturity or notice of the existence of offsets* of the maker against the payee, transfers the equitable, but not the legal title—not effectuating an anterior, imperfect transaction, or excluding equitable defences that had become available in the meanwhile.

To this effect is the great weight of authority, English and American; but we deem it unnecessary to quote from opinions at great length, and will content ourselves by citing a few of the leading cases, by title merely, so as to make them of easy and convenient reference. And first in importance is the case of Whistler vs. Foster, 108 English Common Law Reports, upon which all subsequent opinions have been mainly predicated: Goschen Bank vs. Bingham, 118 N. Y. 349; Lancaster Bank vs. Taylor, 110 Mass. 18; Southard vs. Porter, 43 N. H. 379; Clark vs. Whittaker, 50 N. H. 474; Haskell vs. Mitchell, 53 Mo. 468; Gilbert vs. Sharp, 2 Lansing, 415; Savage vs. King, 17 Maine, 301; Omaha National Bank vs. Walker, 5 Fed. Rep. 399; Sprinning vs. Sullivan, 22 Mich. 491; Minor vs. Berwick, 95 Mich. 491; Trust Company vs. National Bank, 101 U. S. 68; Randolph on Commercial Paper, pp. 449 and 450; Dan. Neg. Ins. (Fourth Edition) Sec. 745, p. 737.

Our conclusion is that our judgment must be reversed, a rehearing granted and a decree rendered in favor of the plaintiff—the cause

having been argued orally on this application, no further hearing or delay is necessary.

It is therefore ordered and decreed that our former judgment be set aside, and proceeding to render such judgment as should have been pronounced originally, it is ordered and decreed that the judgment appealed from be annulled and reversed, and that plaintiff have and recover of and from the defendant, I. H. Stauffer, the two notes that are described in his petition, upon making payment to him of the sum of $1492.42; and it is further ordered and decreed that the defendant and appellee pay all costs of both courts.