## Carl Schoepfer et al. v. Adolph Tommack.

1. PROMISSORY NOTES—*A Consideration for an Indorsement.*—In June, 1896, A. W. & S. W. made their joint promissory note obligating themselves to pay to the order of C. S., in two years after date, the sum of three hundred dollars. In October following, T. bought the note and paid three hundred dollars for it, but left it in the possession of C. S. for about three months, when he took it and kept it until January, 1898, and then returned it to C. S., who kept it until April or May, 1899. The note was not indorsed in any way until April or May, 1899, when C. S. indorsed it at the request of T. so that " he could show that he didn't find or steal it." *It was held* that three hundred dollars paid by T. to C. S. for note at the time he purchased it was sufficient as a consideration for the indorsement in 1899. It is immaterial in this case that the indorsement was not made at the time the note was sold.

2. SAME—*When Assignable Only by Indorsement.*—When a promissory note, properly assignable only by indorsement, is delivered without such indorsement, the transferee gets only an equitable title. He may, however, have a right to a legal title and therefore to an indorsement, if it is necessary to complete his legal title, and a court of equity may compel such indorsement.

3. SAME—*When Properly Transferable by Indorsement.*—Where a promissory note is originally payable to a person or his order, it is properly transferable by indorsement, because in no other way will the transfer convey the legal title to the holder, so that he can at law hold the other parties liable to him *ex directo*, whatever may be his remedy in equity.

4. SAME—*Notice of Dishonor—Payee and Indorser.*—The payee of a promissory note transferred by him without an indorsement at the time, but subsequently indorsed, can take no advantage of the want of notice of dishonor when he did in fact indorse it, because the indorsement must be considered as made when he sold and transferred the note and not at the time when it was actually indorsed by him. Notice of dishonor, when necessary, is to be given when a note matures, not when it is actually indorsed.

5. PRACTICE—*Several Judgments on Joint Instruments, Under the Act of 1895.*—In an action on a promissory note, under the act of 1895 relating to negotiable instruments, if the plaintiff recovers, judgment is to be entered against such one or more of the defendants as are found liable to him.

**Assumpsit,** on a promissory note against the makers and indorser. Error to the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1901. Affirmed. Opinion filed October 24, 1901.

Lackner, Butz & Miller, attorneys for plaintiffs in error.

Newcomer & Dellenback, attorneys for defendant in error.

Mr. Presiding Justice Windes delivered the opinion of the court.

This was assumpsit upon the common counts, to which was attached a copy of the instrument sued on, being a note for $300, dated June 11, 1896, payable two years after date to the order of Carl Schoepfer, with interest at eight per cent per annum, payable annually, made by August Weichert and Lillie Weichert, and indorsed by Carl Schoepfer, the payee. The plea was the general issue by Schoepfer alone. A trial before the court without a jury resulted in a finding for the plaintiff of $330, and judgment thereon, to reverse which this writ of error is prosecuted.

The evidence shows in substance the making and indorsement of the note as above described, a copy of which was offered in evidence without objection; that plaintiff, the defendant in error, bought the note of Schoepfer in October, 1896, and paid him $300 for it, but left the note in Schoepfer's possession for about three months; that plaintiff then got the note from Schoepfer and retained it until January, 1898, when plaintiff returned it to Schoepfer, who kept it until April or May, 1899. During all this time no indorsement of the note had been made, and it was not indorsed until about the time plaintiff received the note back from Schoepfer in April or May, 1899, when, according to Schoepfer's testimony, he indorsed it, at plaintiff's request, so that he, plaintiff, could " show he didn't find it or didn't steal it." It also appears that at the time Schoepfer sold the note to plaintiff, nothing was said about its indorsement. Schoepfer kept the note from the time of its sale for about the three months following, at plaintiff's request. The remainder of the time the note was in Schoepfer's possession at his request, and because of a foreclosure suit which made it

necessary to give the note to a lawyer, as he claimed. Plaintiff can not read nor write English.

For plaintiff in error it is claimed, first, that there was no consideration for the indorsement by Schoepfer; second, that no proper steps were taken to fix the liability of the latter as indorser; and third, that a joint judgment was not warranted by the evidence.

As to the first point, we think that the $300 paid by plaintiff to Schoepfer for the note was the consideration for the indorsement. Nothing being said at the time of the sale of the note, it was Schoepfer's duty to pass to the plaintiff the legal title of the note. That he would do by simply indorsing it. It is immaterial, in this case, that the indorsement was not made at the time the note was sold.

In 1 Parsons on Notes and Bills, p. 278, the author says :

" If paper properly assignable only by indorsement be delivered without indorsement, the transferee has but an equitable title. He may have, however, a right to a legal title, and therefore to an indorsement, if this be necessary to make his title legal; and a court of equity would compel such indorsement. And we should say that the indorsee would then have the same rights and the same protection as if the indorsement had been made at the time of the assignment; because it would relate back to that time, as it is given now, only because it ought to have been given then. The absence of indorsement is a merely technical objection; for the actual transfer for value passes the property in the paper substantially, and the indorsement is needed only to make that transfer formal."

The author then proceeds to state that a note acquired *bona fide* as above is not subject to the defense that there was no original consideration for the note.

In Story on Promissory Notes, Sec. 120, the author says :

" If a promissory note is originally payable to a person or his order, then it is properly transferable by indorsement. We say properly transferable, because in no other way will the transfer convey the legal title to the holder, so that he can at law hold the other parties liable to him *ex directo*, whatever may be his remedy in equity."

In Ranger v. Cary, 1 Met. 369, where a note payable on

demand was transferred and delivered by the payee to a
third person before its maturity, for a valuable considera-
tion, but not indorsed until two years afterward, it was
held, in a suit by the indorser against the makers, that they
could not set off a demand which was due to them from the
payee at the time of the making of the note, its transfer and
delivery. . The court say, with reference to the defense
sought to be interposed, " that the indorsement, when made,
should be regarded as relating back to the time when the
plaintiff paid the consideration and the note was actually
delivered to her."

In Hughes v. Nelson, 29 N. J. Eq. 548, the court quotes
approvingly from Watkins v. Maule, 2 Jac. & Walk. 243, as
follows:

" When a note is handed over for a valuable consideration,
the indorsement is mere form; the transfer for consideration
is the substance; it creates an equitable right and entitles the
party to call for the form.    The other party is bound to do
that formal act, in order to substantiate the right of the
party to whom he has transferred it; " and held that the
complainant who received a note for a valuable considera-
tion from the payee before maturity was, in equity, an
indorsee with all the rights of a *bona fide* holder for value
before maturity.

In Baker v. Arnold, 3 Caines (N. Y.), 279–83, which was
a suit by the indorsees against the makers of a note, there
was evidence tending to show that the indorsement was in
fact made after maturity of the note, but it appeared that
the plaintiffs were also in fact *bona fide* holders for a valu-
able consideration before maturity, and the court held that
the indorsement, even if made after maturity, would be
held to relate back to the time the note was actually deliv-
ered to the plaintiffs.

In Beard v. Dedolph, 29 Wis. 136–42, it was held, upon
the authority of the Ranger case and the citation from Mr.
Parsons, *supra*, that the *bona fide* holder of a note payable
to order and not transferable by delivery only, but which
was delivered before maturity, though not actually indorsed
until after maturity, is protected as against everything sub-

sequent to the delivery of the paper, and that the indorsement related back to the time of delivery.

We think the case of Klein v. Currier, 14 Ill. 237, relied on by plaintiffs in error, is not applicable, as it relates to a guaranty, not an indorsement.

In 1 Daniel on Neg. Insts., Sec. 745, the author, in speaking of the ruling in the Baker case, *supra*, that an indorsement relates back to the time of assignment and operates as if then made, says that the doctrine is doubtless true, when the indorsement was agreed upon and intended at the time of the assignment.

We are inclined, however, to the opinion that the doctrine should not be so limited, unless it may be said that there is an implied agreement and intention to indorse the paper where, as here, nothing was said, and there was a *bona fide* sale for a valuable consideration.

It is a principle of equity that a thing will be considered as done which ought to have been done. The authorities hold that under the circumstances of this case, equity would compel his indorsement. The indorsement was made, it is true, long after maturity. That is all that equity could require, and the rights of defendant in error should be considered the same as if the indorsement had been made when he first paid his money and received the note.

The note became due June 11, 1898, when it was in Schoepfer's possession at his own request, and he can take no advantage of the fact that no steps were taken to fix his liability as indorsee. He knew perfectly well that the note was not paid by the makers, and he paid interest thereon. That dispenses with any notice of dishonor at that time. Schoepfer being in possession of the note, is a valid excuse for not notifying him of its dishonor. Hinsey v. Studebaker Mfg. Co., 73 Ill. App. 278-83; Story on Prom. Notes, Sec. 368; 2 Greenleaf's Evid., Sec. 184; 2 Am. & English Ency., 419; 1 Parsons on N. & B., 521, 584; Havens v. Talbot, 11 Ind. 323.

Schoepfer can take no advantage of the want of notice of dishonor when he did in fact indorse, because the indorse-

ment must be considered as made when he sold the note and not at the time it was actually indorsed. Notice of dishonor, if necessary, should have been given when the note matured, not when it was actually indorsed.

It is conceded that this action was warranted by the statute of 1895, relating to negotiable instruments, and it follows, if we are correct in the conclusions above stated, that there was no error in taking a joint judgment against all the defendants. The statute (Sec. 7b), which provides how judgment shall be entered, first permits a severance under circumstances not relevant here, and then says : " If the plaintiff recover, judgment shall be entered against such one or more defendants as are found liable to him, but in no event shall the plaintiff be entitled to more than one satisfaction."

The judgment of the Circuit Court is affirmed.