GENEIEVE B. PARR (who is also known as Genevieve B. Parr) a widow, *Appellant,* v. FORT PIERCE BANK & TRUST COMPANY, a Corporation of the State of Florida, *Appellee.*

Division B.

Opinion filed October 21, 1930.

*Vocelle & Mitchell,* for Appellant;

*F. L. Hemmings,* for Appellee.

Buford, J.—During the year 1927 the appellant had money on deposit in the Fort Pierce Bank & Trust Company, a banking corporation located at Fort Pierce, Florida. She, having great confidence in the officers of that institution, authorized such officers to invest money for her in dependable securities.

On January 1, 1926, Fort Pierce Bank & Trust Company received from one Koblegard and one McMurtray a note in the sum of eight thousand ($8,000) dollars together with a mortgage on certain real estate to secure said note. The note was payable on or before three (3) years after date. The interest was at the rate of eight per cent (8%) and

payable semi-annually. On August 3rd, 1927, the Fort Pierce Bank & Trust Company, it is alleged, assigned by a separate instrument the mortgage to the appellant. The assignment contains the following clause: "together with the note or obligation described in said mortgage and the money due and to become due thereon with interest from the 1st day of July, 1926." This shows upon its face that at the time of the assignment the makers of the note and mortgage were in default on account of the non-payment of interest due January 1st, 1927, and July 1st, 1927.

On the 19th day of April, 1930, appellant filed her bill of complaint in the Circuit Court of St. Lucie County alleging that she had filed suit to foreclose the mortgage and pursuant thereto a final decree had been entered against the makers of the note and mortgage and that after costs had been paid and all credits duly made there was due her a balance of $7,709.55 on the said indebtedness, together with interest from April 7th, 1930, at the rate of 8% per annum. She alleges that the notes were not indorsed by the Fort Pierce Bank & Trust Company but that she is entitled to such indorsement under the laws of the State of Florida. She alleges that she has demanded the indorsement by the Fort Pierce Bank & Trust Company and demanded payment of the balance due her by Fort Pierce Bank & Trust Company but that the said Fort Pierce Bank & Trust Company has failed and refused to indorse the note and has failed and refused to pay the balance due her or any part thereof.

Section 6808, Comp. Gen. Laws of Fla., reads as follows:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addi-

tion, the right to have the indorsement of the transferer. But for the purpose of determining whether the transferee is a holder in due course the negotiation takes effect as of the time when the indorsement is actually made.''

There was a demurrer filed and sustained to the bill of complaint. It is a well settled principle that equity looks upon that as done which should have been done. The bill alleges in effect that the officials of the bank, having authority from the appellant to invest her money which was on deposit in the bank, in dependable securities assigned a mortgage and note to the appellant for the face value of the mortgage and note and charged her account with the full sum of $8,000.00, and this at a time when the makers of the note had defaulted in two interest payments and declare the full sum of the debt due and to foreclose the mortgage for enforcement of the payment of the debt because of the default.

It appears from the allegations of the bill and from the contents of the exhibits attached thereto, which are by apt language made a part thereof, that the bank represented both itself and the appellant in the transaction and assigned to the appellant a mortgage and note which were of doubtful value and in lieu thereof transferred to itself $8,000.00 of the appellant's money.

We think that under the provisions of Section 6808, *supra,* the complainant in the court below was entitled to an unqualified indorsement unless there was an agreement to the contrary.

The fact that she accepted an assignment by a separate written instrument does not evidence an agreement upon her part to accept a qualified indorsement.

The Supreme Court of Oregon, in the case of Simpson v. First National Bank, 185 Pac. R. 913, in a very able opinion prepared by Mr. Justice HARRIS, say:

"Action against bank to recover balance on bankrupt's note, in which note, prior to maker's bankruptcy, the bank, as agent for plaintiff, had invested her money, and which note had been delivered by bank to plaintiff without indorsement and with payee's name left blank, the complainant averring that 'plaintiff is entitled to the indorsement of the defendant * * * upon said note' and that the bank, on account of its negotiation and sale of the note to plaintiff, was liable as indorser, *held,* to state a claim based on the note and not upon any independent oral promise of guaranty or express warranty.

"In this jurisdiction the distinction between suits in equity and actions at law is preserved. The proceeding brought by the plaintiff is an action at law and not a suit in equity; and, since the court cannot compel an indorsement of the note in an action at law, but can do so only in a suit in equity, it necessarily follows that since the amended complaint is in its present condition insufficient as a complaint in equity, the trial court correctly sustained the demurrer to the complaint, even though it be assumed that the plaintiff is entitled in a proper proceeding to compel the bank to indorse the note. But it is said in Section 390, L. O. L., as amended by Chapter 95, Laws 1917, that 'No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have a right to amend his pleading, to obviate any objection on that account.'

"It is possible that the plaintiff can so amend her complaint as to entitle her to the indorsement of the

bank and to a judgment against it as an indorser, and hence, the cause will be remanded, with permission granted to the plaintiff to amend her complaint within the authority of Chapter 95, Laws 1917. Farmers' Loan & Trust Co. v. Brown, 182 Iowa 1044, 165 N. W. R. 70; Brown v. Wilson, 45 S. C. 519, 23 S. E. R. 630, 55 Am. St. R. 779, 780.''

The plaintiff relies upon section 5882, L. O. L., which corresponds with section 49 of the Uniform Negotiable Instruments Law, is substantially like section 31 (4) of the English Bills of Exchange Act 1882, and reads as follows:

''Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein, and the tranferee acquires in addition, the right to have the indorsement of the transferer; but for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when indorsement is actually made.''

It must be remembered that, at the time when the bank transferred the note to Grace Simpson, the instrument did not contain the name of a payee, although the note was payable to ''order'' and contained a space which was plainly intended as the place for the insertion of the name of some payee. If, when the note was transferred by delivery to the plaintiff, the name of the bank appeared in the note as payee, then by force of the express terms of the statute the plaintiff would be entitled to the indorsement of the bank. Lawless v. State, 114 Wis. 189, 192, 89 N. W. R. 891. And so, too, in the absence of a statute she could compel the bank to indorse the note.

Unterharnscheidt v. Missouri State L. Ins. Co. 160 Iowa 223, 138 N. W. R. 459, 45 L. R. A. (N. S.) 743; Swenson v. Stolts, 36 Wash. 318, 78 Pac. R. 999, 2 Ann. Cas. 504; Schoepfer v. Tommack, 97 Ill. App. 562, 567; Walters v. Neary, 21 T. L. R. 146. It is true that many of the precedents and writers upon the subject do no more than to define the right of the transferee to the indorsement of the transferer where the transferer expressly agreed to indorse an instrument payable to his order but because of inadvertence, mistake or fraud failed to do so, and yet it is doubtful whether any of those precedents or writers can be regarded as authority for saying that the transferee would not be entitled to the indorsement unless the transferer expressly agreed to indorse. 1 Daniel on Neg. Inst. (6th Ed.) 857; Byles on Bills (7th Ed.) 157; 1 Parsons on Notes and Bills, 278; Hughes v. Nelson, 29 N. J. Eq. 547; Story on Promissory Notes, No. 120; 1 Story's Eq. Jur. (13th Ed.) No. 99b; Southard v. Porter, 43 N. H. 380; Brown v. Wilson, 45 S. C. 519, 23 So. E. R. 630, 55 Am. St. R. 779. If the right to an indorsement must be predicated upon an agreement, it is more logical and certainly more consistent with the character, qualities and purposes of the paper dealt with to deduce from the character, qualities and purposes of such paper the conclusion that the agreement for the indorsement may, under the rules of the law merchant, be implied; and, that, therefore, if at the time of the transfer the parties are silent upon the subject of indorsement, then the law implies an agreement by the transferer to indorse a negotiable instrument when it is made payable to his order. Schoepfer v. Tommack, 97 Ill. App. 562, 566; Wade v. Guppinger, 60 Ind. 376, 378; Walters v. Neary, 21 T. L. R. 146; Hood v. Stewart, 17 Session Cases, (4th series) 749, 751. In Watkins v. Maule, 2 Jac. & Walker's 237, 243, an oft-cited precedent, it was said:

"When a note is handed over for valuable consideration, the indorsement is mere form; the transfer for consideration is the substance; it creates an equitable right and entitles the party to call for the form. The other is bound to do that formal act, in order to substantiate the right of the party to whom he has transferred it."

In Ex Parte Greening, 13 Ves. Jr. 206, the court said that the transfer creates an equitable right and entitles the holder to call for the form "which it would be fraudulent to withhold." In some precedents the central thought seems to be that the transferee is entitled to the indorsement of the transferer so that the former may be vested with the legal title and thus be enabled to sue in his own name, while in others some emphasis is placed upon the idea that the transferee is entitled to have the negotiable character of the paper preserved. In case of an express agreement for an indorsement, the transferee was, of course, entitled to compel the transferer to perform his agreement. Hughes v. Nelson, 29 N. J. eq. 547; Southard v. Porter, 43 N. H. 380. We are not called upon to determine the true reasons which underlie the rule which under the law merchant gave to the transferee of paper payable to order the right to the indorsement of the transferer. Common law precedents and discussions by text writers of the rules of the law merchant are valuable, however, in ascertaining the meaning of the statute.

At common law the mere delivery of an indorsed instrument payable to the order of the transferer only passed an equitable title with the result that to enforce payment by the maker, the transferee was obliged to cause an action to be prosecuted in the name of the tranferer. A transfer without indorsement destroyed the negotiability of the paper, and the transferee held it subject to what-

ever equities were available to the payer against the transferer. With the adoption of the Codes, however, it was quite generally held that the transferee could sue in his own name, for the reason that he was the real party in interest notwithstanding the fact that the title transferred was equitable and subject to the defenses which the payer might have made prior to notice of the transfer. Moore v. Miller, 6 Or. 254, 25 Am. R. 518; First National Bank v. McCullough, 50 Or. 508, 514, 93 Pac. R. 366, 17 L. R. A. (N. S.) 1105, 126 Am. St. R. 758; McFeron v. Doyens, 59 Or. 366, 369, 116 Pac. R. 1063; Baker v. Moran, 67 Or. 386, 394, 136 Pac. R. 30; First National Bank v. Moore, 137 Fed. 505, 70 C. C. A. 89; Cornich v. Woolverton, et al., 32 Mont. 456, 81 Pac. R. 4, 108 Am. St. R. 598; Meuer v. Phoenix National Bank, 94 App. Div. 331, 88 N. Y. Supp. 83; Jenkins v. Wilkinson, 113 N. C. 532, 18 So. E. R. 696; Pavey v. Stauffer, 45 La. Ann. 353, 12 So. R. 512, 19 L. R. A. 716, 721; Haskell v. Mitchell, 53 Me. 468, 89 Am. Dec. 711; 8 C. J. 385.

The statute, section 5882, L. O. L. declares in express terms that the transfer "vests in the transferee such title as the transferer had therein," and hence by force of the statute itself the transferee is vested not only with the equitable but also with the legal title, although the transferee cannot until indorsement be treated as a holder in due course. Goodsell v. McElroy Bros. Co., 86 Conn. 402, 85 Atl. R. 509; Brannon on Neg. Insts. Law 50; Cantrell v. Davidson, 180 Mo. App. 410, 168 S. W. R. 271; Carter v. Butler, 264 Mo. 306, 324, 174 S. W. R. 399, Ann. Cas. 1917A, 483; Keel v. Construction Co., 143 N. C. 429, 434, 55 So. E. R. 826; Manufacturers' Commercial Co. v. Blitz, 131 App. Div. 17, 115 N. Y. Supp. 402; Mayers v. McRimmon, 140 N. C. 640, 53 So. E. R. 447, 111 Am. St. R. 879; Goshen Nat. Bank v. Bingham, 118 N. Y. 349, 23 N. E. R. 180, 7 L. R. A. 595, 16 Am. St. R. 765.

Inasmuch as the statute in express terms vests the transferee with the legal title and then declares that, in addition, to acquiring all the title of the transferer, the transferee acquires, "the right to have the indorsement of the transferer" it necessarily follows that this additional right is granted for the purpose of accomplishing some result besides the mere transfer of the title; and since the only other reasonably assignable purposes relate to the negotiability of the paper and to the rights arising out of the contract of indorsement, it follows as another necessary conclusion that at least one of the purposes of the statute in granting the right to the indorsement was to preserve the negotiability of the paper. All will probably concede that one of the purposes was to preserve negotiability; but there may be room for debate as to whether the transferee can call for an unqualified indorsement, and thus secure the most complete rights which an indorsement can create. The next inquiry brings us to a discussion of the kind of indorsement which the transferee can call upon the transferer to make.

The statute, section 5866, names five species of indorsement; special, blank, restrictive, qualified and conditional. For convenience, indorsements may be referred to as qualified or unqualified, and we shall confine the discussion to a consideration of whether the transferee is entitled to an unqualified indorsement or whether he must be satisfied with a qualified indorsement. The essential difference between a qualified and unqualified indorsement is found in the extent of the liability imposed by the contract created by the indorsement Sections 5898 and 5899 L. O. L. A qualified indorsement constitutes the indorser a mere assignor of the title to the instrument, although Section 5871 L. O. L. declares that "such an indorsement does not impair the negotiable character of the instrument." If the purpose

of the statute is merely to prevent the paper from permanently losing its negotiability, then that purpose is fully accomplished by a qualified indorsement. But it must be remembered that the statute does not specify the kind of indorsement.

It must also be remembered that an unqualified indorsement is in a certain sense unlimited, while a qualified indorsement is limited. Again, it must be remembered that an unqualified indorsement is the one most used in the commercial world and the one which is generally expected by the transferee unless the parties have agreed to the contrary. At least two, and possibly more, writers have referred to Seeley v. Reed (C. C.) 28 Fed. 164, as authority for saying that a contract for the transfer of a note only carried with it the right to a qualified indorsement; but that case must be read in the light of the nature of the contract made between the parties, the relation which Reed sustained to the corporation, and the reason for making the notes of the corporation "payable to his own order"; and, when the opinion is so read, it cannot be treated as a precedent for holding that the transfer of an unindorsed note payable to order carried with it only the right to a qualified indorsement. In Wade v. Guppinger, et al., 60 Ind. 376, it was held that, where one person agrees to transfer a note to another, the law implies that the transfer is to be made by indorsement, unless a different agreement is made by the parties, and that, in the absence of an agreement to the contrary, the transferee is entitled to a "simple indorsement"; and it was therefore decided that the party claiming that the transfer was to be by "indorsement without recourse, or otherwise than by simple indorsement has on him the burden of so proving." We think that the doctrine approved in Wade v. Guppinger is consistent with legal principles and entirely in har-

mony with the use made of negotiable instruments in the commercial world.

If an unqualified indorsement may be considered as containing within the whole sum of the rights capable of being given by the contract which results from an indorsement, then a qualified indorsement must be deemed to confer only a portion of these rights. One embraces the whole sum, the other represents only a part of that sum. The statute gives the right to an indorsement without saying whether it shall be the whole sum or only a part; and, therefore, as in the case of a contract, when the statute gives the right to an indorsement without naming the species, the law will imply an agreement for the whole sum, rather than for only a part of the rights capable of being conferred by an indorsement, and this implication will prevail unless the party claiming to the contrary submits sufficient evidence to sustain his claim. Wade v. Guppinger, et al., 60 Ind. 376. Apparently assuming that Section 49 of the Negotiable Instruments Law relentlessly command an unqualified indorsement regardless of an agreement for a lesser indorsement, one critic of the Negotiable Instruments Law has suggested the propriety of amending Section 49 as to provide for a qualified indorsement. Another writer answers the criticism and urges that,

"It certainly does not follow that Section 49 requires an unqualified indorsement in every case * * * Section 49 does not specify any one kind of indorsement. In every case the transferee must go into a court of equity to compel an indorsement. Obviously he will be given the kind of indorsement to which he is entitled. If the parties agreed that the transferor was not to assume personal liability, an indorsement (without recourse) gives the transferee all

that he is entitled to by common sense, by equity or by .Section 49." Brannan's Neg. Inst. Law 170, 259.

See, also, 14 Harvard Law Review, 241; 41 American Law Register (N. S.) 437, 499, 561.

We think, therefore, that Section 5882, L. O. L. gives to the transferee the right to an unqualified indorsement unless the parties agreed that the indorsement should be qualified.

In Lawrence v. Citizens State Bank, Manhattan, et al., 216 Pac. R. 262, the Supreme Court of Kansas say:

"Under Section 56 of the Negotiable Instruments Act. (Gen. Stat. 1915, No. 6576), the transferee of a negotiable instrument who has paid value therefor is entitled to an unqualified indorsement by the transferor, unless a qualified indorsement was agreed to by the parties or is fairly to be implied from the circumstances involved in the transfer."

In Swenson v. Stoltz, 2 Am. and Eng. An. Cases 504, the Supreme Court of Washington say:

"Within the negotiable instruments law, enacted in Washington in 1899, the mere delivery of a negotiable instrument, payable to order, vests title in the transferee and carries with it the right to compel the indorsement of the transferor.

"The payee of a note who transfers same by delivery merely for a valuable consideration is liable at the suit of the transferee upon his oral guaranty made at the time of the transfer as upon an original promise not within the statute of frauds, the provision of the negotiable instruments law declaring that no person shall be liable upon a negotiable instrument whose

signature does not appear thereon not being applicable where the liability is not predicated upon the instrument itself."

It will be observed that Section 49 of the Negotiable Instrument Act of Oregon and Section 56 of the Negotiable Instrument Act of Kansas are in the identical language used in Section 6808, Comp. Gen. Laws of Florida, and while the decisions, parts of which are herein quoted with approval, were rendered subsequent to the passage of the Negotiable Instrument Law in Florida and, therefore, may not be considered binding upon this Court, they appear to enunciate the principles of law which should govern in a case of this kind and should be followed.

It is contended that the complainant is estopped from maintaining the present suit because the bank was not made a party to the foreclosure suit. We think this position untenable.

The bill, and exhibit thereto, shows that the bank by assignment transferred and conveyed to the complainant all its right, title and interest in the mortgage and, therefore, it was in no wise necessary to make the bank a party to the foreclosure suit.

When the foreclosure was completed and the funds derived from that procedure applied to the debts secured by the mortgage, then the complainant might proceed to exhaust such other remedy as she might have to collect the balance due her and in pursuance of this purpose, had the note been endorsed as it should have been by the bank, she could have maintained a separate suit at law against the bank as endorser for the balance due on the note. But, as the note was not endorsed by the bank it is necessary for her to come into a court of equity and there enforce her claim against the bank. See Simpson v. First National Bank of Roseburg, *supra,* and cases there cited.

For the reasons above stated it will be seen that the bill contains equity.

The order sustaining the demurrer should be reversed and it is so ordered.

Reversed.

WHITFIELD, P. J., and STRUM, J., concur.

TERRELL, C. J., and ELLIS and BROWN, J. J., concur in the opinion and judgment.