FARMERS LOAN & TRUST COMPANY, Appellee, v. A. R. BROWN et al., Appellants.

**ELECTION OF REMEDIES:** Finality of Election—Proceeding at
1  Law with Transfer to Equity. Proceeding at law on an instrument, with full knowledge of its defective condition, is not an irrevocable election of remedies such as to prevent a transfer

to equity for reformation.    So held where the note sued upon had no payee.

REFORMATION OF INSTRUMENTS:    Grounds—Mistake—Lapse
2   of Time.    Equity may so reform an instrument as to correct a mutual oversight or mistake, even though the holder of the instrument originally had the right to correct such oversight or mistake, but had lost the right by the lapse of an unreasonable time.    So held where a note was issued without a payee.

EQUITY:   Maxims—That Done Which Ought to Be Done.    Principle
3   recognized that equity regards that done which ought to be done.

REFORMATION OF INSTRUMENTS:    Instruments Reformable—
4   Non-Negotiable Note Made Negotiable.    Non-negotiable instruments may be so reformed as to make them negotiable, *when no existing defense or right is impaired.*    So held where the reformation consisted of inserting the name of a payee in an accommodation note.

BILLS AND NOTES:   Filling Blanks—Authority—Reasonable Time.
5   Principle recognized that the holder of a promissory note may, within a reasonable time after issuance, fill blanks in the note. So recognized where the name of the payee was omitted.

BILLS AND NOTES:    Consideration—Accommodation Note—De-
6   fenses.   Want of consideration is no defense to a non-negotiable accommodation promissory note, nor to a negotiable promissory note which is received with knowledge of its accommodation character.

*Appeal from Woodbury District Court.*—J. W. ANDERSON, Judge.

NOVEMBER 16, 1917.

REHEARING DENIED FEBRUARY 15, 1918.

ACTION in equity to reform a promissory note and to recover the amount due thereon.    Decree for the plaintiff. Defendants appeal.—*Affirmed.*

*Carter, Brackney & Carter,* and *Everett Waller,* for appellants.

*Oliver, Harding & Oliver,* for appellee.

GAYNOR, C. J.—This action is brought to recover on a promissory note, executed by defendants herein as accommodation makers, and by them delivered to one Austin for his accommodation, and endorsed and delivered by Austin to the plaintiff as collateral security for loans made by the plaintiff to Austin.. The note, at the time it was delivered to Austin by the defendants, and at the time it was endorsed by Austin to the plaintiffs, was in due form of a promissory note, except that no payee was named therein. The note in suit, at the time it was delivered by the defendants to Austin, and by Austin endorsed to the plaintiff, so far as material to this controversy, read as follows:

"$500.00      `       July 13, 1914.

"Thirty days after date, for value received, we or either of us, promise to pay to the order of................Five Hundred Dollars, payable at the office of W. J. Austin, with interest at the rate of......per cent, per annum from .....................until paid. Interest if not sooner paid shall be due and payable...:...................and ...................annually thereafter until paid, and if not paid when due shall become as principal and bear the same rate of interest, payable in the same manner."

The action was originally brought at law, the parties appeared, a jury was waived, and the cause proceeded to trial. After the introduction of plaintiff's evidence, the defendants moved for a verdict. The grounds upon which the motion rested do not appear. The plaintiff thereupon filed an amendment to its petition, praying for equitable relief, and moved to transfer the cause to equity. The court thereupon transferred the cause to the equity side of the calendar for trial. This was on January 10, 1916. Thereafter, on September 11, 1916, the plaintiff filed its amended and substituted petition in equity, to which the defendants appeared and filed answer. Upon this petition and answer, the case was tried, and a decree entered for

the plaintiff, reforming the note by inserting therein the name of Austin, as payee, and entering judgment against the defendants for the amount of the note. Defendants appeal.

In the amended and substituted petition upon which the trial was had, the plaintiff alleged 'the execution of the note as the joint note of these defendants; that, subsequent to the execution of the note, the plaintiff became a holder thereof in due course, by endorsement from Austin; that the note, or instrument, whatever it may be, was originally signed by the defendant Etta Brown, on the blank printed form, on the 13th day of July, 1914, and by her delivered to her codefendant, A. R. Brown, to be by him filled out and used as accommodation paper for the accommodation of Austin. After she had signed and delivered the same to her son, Brown, he filled the blanks, to make the same available as accommodation paper for the use of Austin, by signing his own name thereto as joint maker. It was after this that it was endorsed by Austin and delivered to the plaintiff. In so filling out and using said instrument as accommodation paper, Brown and Austin carried out the purpose for which the defendant Etta Brown placed her signature upon the paper, and the object and purpose for which she intended and understood the same was to be used. A. R. Brown, her son, was acting for her as her agent, or with her implied authority, in filling out the blanks and in delivering the paper. It was delivered by Etta Brown to her son, A. R. Brown, with the purpose and understanding that he was to fill in the blanks, and do whatever was necessary to make the same available to Austin as accommodation paper. The failure or omission of the defendant A. R. Brown, in filling the blanks in said instrument, to insert the name of said Austin, or some other proper person, as payee, in the blank space reserved therefor, was the

result of a mutual mistake and oversight on the part of all parties connected with said paper.

Plaintiff prays that the instrument be reformed by inserting as payee, in the appropriate blank, the name of Austin, for whose accommodation said instrument was executed, if the court should deem such reformation necessary, and that it have judgment for the amount of said note, with six per cent interest from the time it became due.

The defendant interposed several defenses, among which appears a claim that the note was materially altered, after Etta Brown's name was signed to it, in that the name of A. R. Brown, as joint maker, was attached without her knowledge or consent; that the instrument is not the instrument signed by her, and is not filled up or used in the form or manner as authorized by her; that said instrument was never completed, and no payee is named in said instrument, and an unreasonable time has elapsed, and the name of the payee cannot now legally be inserted; that the plaintiff had full knowledge of the fact that no payee was named, and was grossly negligent in taking said instrument; that the plaintiff is now estopped from claiming the right to have said instrument reformed. Further, defendants allege that suit was brought at law upon this identical instrument, asking for a recovery of a money judgment at law in its present form, and plaintiff elected to pursue its remedy at law upon the instrument as made, and it waived its right to have the instrument reformed.

While the defendants filed separate answers, the above statement covers the issues presented in their several answers.

Etta Brown was called as witness on the part of the defendants, and testified that she signed the instrument now in suit; that it was presented to her by her son; that there was no date on it when she signed it; that she gave it to her son as accommodation paper for Mr. Austin; that

her son said to her that he wanted to help his friend Austin out. She was asked this question:

"You understood from what your son said that you were giving this note as an accommodation note for Mr. Austin, and you didn't get any consideration yourself at all? A. That was my understanding. I was not to get any consideration; I was not thinking of it. It was an accommodation for Mr. Austin. He said, if he could help Austin, he would be glad to do it. I put my name on a blank note and delivered it to my son. He asked me if I would help Austin out with my name. That was all. He didn't tell me what he was going to do with the note. He just asked me if I would help Austin out with my name."

A. R. Brown, one of the defendants, testified that he was a son of the other defendant; that he had his office with Austin in the Farmers Loan & Trust Building; that, after he secured the instrument sued on, he turned it over to Mr. Austin; that he wrote in the date July 13, 1914, the figures 500, appearing in the corner, and the name of Austin, as it appears, and that he signed his name above his mother's; that he did all this before he turned the note over to Austin, except the signing of his name as joint maker; that his mother signed the blank note at his request. He testified:

"I told her I wanted to help Austin out, and that was my purpose in getting the note. I didn't notice, when I turned the note over to Austin, that I had failed to enter his name as payee. That was an oversight."

He was asked this question:

"When you had your mother sign this and deliver it to you, it was the purpose then to fill it out and do whatever was necessary to make it available to Mr. Austin for accommodation paper if he needed it, was it? A. I expected him to use it. That was the reason I got it."

There is no controversy in the evidence that, after Aus-
tin received the note in its present form, he endorsed it, and
turned it over to the plaintiff company as collateral secu-
rity for a loan.

As to the defense interposed that the note was mate-
rially altered, in that the defendant A. R. Brown signed
the same after it was delivered, and caused, as plaintiffs
claim, a material alteration of the instrument, defeating a
right of recovery, we have to say that the court below found
against this contention, and an examination of the record
leaves us satisfied with the finding of the court; and we as-
sume, in the further disposition of the case, that A. R.
Brown signed the paper before it was delivered to Austin.

There is no contention by the defendants that the plain-
tiff is not entitled to recover the full amount of the note,
if it is entitled to recover at all.

1. ELECTION OF REMEDIES: finality of election: proceeding at law with transfer to equity.

The first point relied upon by the de-
fendants for reversal is the fact that the
plaintiff instituted a suit at law upon this
instrument in the form in which it was re-
ceived by the plaintiff, and thereby waived
the right to change the forum and seek equitable relief, such
as is asked in this amended and substituted petition. This
seems to be argued on the theory of election of remedies:
that plaintiff, having elected to pursue this action at law
upon the instrument in the form in which it was received
by it, cannot thereafter resort to equity, and have the in-
strument reformed. We are not advised in this record as
to what the stumbling blocks were that defendants threw in
the way of plaintiff in its law action. We may assume that
it was the contention of the defendants that, there being
no payee named in the instrument, it was not, therefore, a
promissory note, upon which action could be sustained
against anyone; that, in the instrument as plaintiff received
it, there was no promise on the part of the defendants to

pay anyone any sum of money; and that plaintiff, therefore, had no promise from the defendants to Austin which could be transferred to it by Austin, investing it with a right of action against the defendants, and the claim is that, when the plaintiff sought to enforce this obligation against the defendants, it was on the face of the paper, without evidence of any promise to pay to plaintiff, or to anyone from whom it received it, the money sought to be recovered. Assuming this to be the attitude of the defendants in the law action, the. plaintiff then undertook to allege and prove that the note was given by the defendants to Austin as accommodation paper; that it was transferred by Austin to it, and, through mistake or oversight in the preparation of the paper, Austin's name was omitted as payee, although it was the intention of the parties, in making the instrument, to invest Austin with the rights of a payee; that the intention existed, and the purpose was to insert his name in the instrument, to evidence his right to the paper.

2. REFORMATION OF INSTRUMENTS: grounds: mistake: lapse of time.

When the note was delivered to Austin, if he discovered within a reasonable time that his name was not in the paper as payee, he had a right, within a reasonable time, to insert his name as payee. This right was implied in the very act of the defendants in delivering it to him, with the name of the payee left blank. See 8 Corpus Juris 186, and authorities therein cited:

"If a blank is left for the name of the payee, the holder may put his own name into the blank and sue upon the instrument as payee, or he may fill it with that of a third person."

Clearly, then, the right existed on the part of Austin, on the delivery of this note in the form in which it was drawn, to insert his name as payee in the note. Austin was not a witness in this case, and it is not shown to us why this was not done by him. A. R. Brown, one of the

makers of the note, testified that it was the intention to insert Austin's name; that the name was omitted by oversight. Plaintiff did not discover the omission of this name, so far as this record shows, until suit was brought upon it, and we may assume that this was not discovered within a reasonable time after it came into the hands of the plaintiff, and that plaintiff had no right, in and of itself, to insert the name of Austin in the note at the time it discovered the absence of his name,—although we do not decide this point. Yet it is clear that a court of equity holds that to be done which ought to be done, and, to effectuate the real purpose and intent of the party, may direct this to be done, upon a showing that it was the intention of the parties to the instrument to have the name of Austin inserted in it at the time it was made and delivered, and that, through oversight or mistake, this was not done.

3. EQUITY: maxims: that done which ought to be done.

The statute says (Section 3060-a14, Code Supplement, 1913) :

"Where the instrument is wanting in any material particular, the person in possession thereof has a prima-facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a *negotiable* instrument operates as a prima-facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

This statute simply gives authority to the person in possession of such an instrument to fill the blanks, and limits him in the right to do so to the exercise of that right within a reasonable time.    It does not place a time limit on the right of the maker to do that.    The maker may do that at any time; and where it is apparent upon the record that the maker delivering the incomplete instrument intended to fill the blanks before delivery, that it was his purpose to fill the blanks before delivery, as contended, and that his failure to do that was simply a mutual mistake between the parties, or an oversight, there is no reason why a court of equity, having all the parties before it, may not order him to do that which he intended to do, and would have done,—supposed he had done,—had it not been for the oversight, thereby making the instrument speak, as of the date of its delivery, just what it was the intention and purpose of the parties to the instrument it should say, and what the parties thought it did say when it was delivered.    There is no reason why a court of equity may not order a person to do that which the person concedes he intended to do, which he thought he had done, and which it would be inequitable not to require him to do, under the circumstances shown. The right to fill the blanks, on the part of the holder, is limited to a reasonable time.    But, the instrument having been delivered in its defective condition, it appearing that the defective condition is due to a mutual mistake and oversight of the parties, there is no reason why equity cannot decree that to be done which the parties intended to do, thought they had done, and which, by oversight, they failed to do,—a failure to do which works injustice to the party affected by the oversight.    There was no election of remedies here.    The plaintiff sought in equity simply the reformation of the instrument, as a condition precedent to his right to judgment upon the instrument, a condition which these defendants intended to perform before the instrument

was delivered, but which was omitted by oversight. The cases cited by the defendants are not in point. Take, for instance, a deed of conveyance. The grantor executes a deed in due form, delivers it to a person intended by him as grantee, but fails to insert the name of the grantee in the deed. The fact that the name of the grantee is not inserted in the deed is not discovered until long afterwards. The deed, on its face, shows no conveyance to anyone. The grantee brings an action to reform the instrument by inserting his name as grantee therein. Is there any doubt of his right, on a showing of mistake or oversight, to have the instrument reformed and his name inserted therein as grantee, even though the right existed in him to insert the name himself, upon the receipt of the deed? Or if he had conveyed the land to a third person, believing that his name was in the deed as grantee, would it be contended that his grantee might not bring an action to reform the instrument, under a proper showing, and have his name inserted in the original deed? The filing of the petition in equity and the prayer for reformation were only an incident to the relief prayed for in the original petition.

4. Reformation of instruments: instruments reformable: non-negotiable note made negotiable.

It is next contended that, under the Negotiable Instruments Act, plaintiff was entitled to no relief whatever, because the instrument was without a payee (Section 3060-a1, Code Supplement, 1913), because not complete upon its face at the time it was received. This may be conceded, but does not affect the plaintiff's right in this suit; for, though non-negotiable, it still, when reformed, constituted a promise to pay, to which no defense is urged which could not have been just as well urged if the instrument had been negotiable, but had been received by the plaintiff with notice of want of consideration.

It is apparent from the statutes that the note in ques-

tion was not complete at the time it was delivered.    There was no payee named therein.    It is apparent from the stat- ute that the person to whom it was delivered had the right,

within a reasonable time, to insert his name

5. BILLS AND
NOTES: filling
blanks: au-
thority: rea-
sonable time.

therein as payee, and thereby make it a ne- gotiable instrument.    It may be conceded that, after a reasonable time, the person to

whom it was delivered could not insert his name in the in- strument and make it negotiable, though it was in every other respect negotiable, unless this right was exercised within a reasonable time.    But this does not affect the right of a court of equity, with all the facts before it, such as are disclosed in this case, to reform the writing to make it speak the true intent and purpose of the parties as it ex- isted at the time the instrument was delivered.    It may be, if the right was not exercised within a reasonable time, and resort was had to a court of equity to reform the instru- ment and make it speak the true purpose and intent of the party, that, when reformed, it would be subject to any eq- uities held by the defendant against it.    But the only eq- uities or defenses which could be urged against it are those which the makers of the note might have urged against it, had it been made and intended as a non-negotiable instru- ment at the time of delivery.

This being an accommodation note, the

6. BILLS AND
NOTES: con-
sideration:
accommoda-
tion note:
defenses.

defense of want of consideration is not a defense to it, even though non-negotiable, or, if negotiable, delivered and received with

full knowledge that it was an accommodation note, and de- livered without consideration.    See *Washington Bank v. Krum*, 15 Iowa 53.    An accommodation note is a note to which the accommodating party puts his name without con- sideration, for the purpose of benefiting or accommodating some other party who desires to raise money on it, and the party accommodated is to pay it when due.    As said by

Daniel, in 1 Daniel on Negotiable Instruments, Section 189:

"An accommodation bill or note, then, is one to which the accommodating party puts his name without consideration, for the purpose of accommodating some other party who is to use it, and who is expected to pay it."

In *Winter v. Home Ins. Co.*, 30 Iowa 172, it is said:

"In the hands of the party accommodated, the defense of want of consideration is good. But in the hands of a third party, who purchases in good faith for value, the defense does not obtain. The accommodation maker intends to lend his credit to a party who pays nothing, and the holder takes the paper and pays value for it upon faith of the credit thus loaned." See also *Stephens v. Monongahela Nat. Bank*, 88 Pa. St. 157 (32 Am. Rep. 438).

On the whole record, we find no ground for interfering with the decree of the district court, and it is, therefore,—*Affirmed.*

WEAVER, PRESTON, and STEVENS, JJ., concur.