### BROWN v. WILSON.

1. ENDORSER—NOTES AND BILLS.—The endorsement of a note after delivery, in accordance with a previous contract, will not render such endorsement void.
2. PRINCIPAL AND AGENT—ENDORSER.—If the agent of a party, who has agreed to endorse a note, actually endorses it without authority, and his principal afterwards ratifies it, the endorsement is binding on the principal.
3. IBID.—IBID.—If an agent act according to his usual course of dealing, and the act is afterwards ratified by the principal, such act is binding on the principal.
4. VERDICT—JUDGMENT—NEW TRIAL—DEFENDANT.—Where one of several defendants only was served, and a verdict was rendered against the defendants generally, the defendant served is not entitled to a new trial, upon the ground that the judgment is void as to the defendants not served.
5. VERDICT—CHARGE.—The verdict in this case does not appear to be in disregard of the charge of the Circuit Judge.
6. PROTEST—NOTES AND BILLS—ENDORSER—REMEDY—STATS. CONSTRUED.—It is not necessary to protest a promissory note for $100 or more in order to make the endorsers liable, a demand and notice being sufficient, unless the note is made by a person residing in one State and payable to a person residing in another, in which case it is considered a foreign bill of exchange, and protest is necessary. The statutory remedy being additional to the common law action. *Construing* Rev. Stat., secs. 1393, 1394, 1395, 1396.

Before BUCHANAN, J., Abbeville, January, 1895. Affirmed.

Action by Charles D. Brown against George S. Wilson and John McNeill, partners doing business under the firm

name of Wilson & McNeill, and D. A. Allen, doing business under the name and style of Abbeville Manufacturing Company, on promissory note of $100. George S. Wilson alone was served.

The following is the charge of the Circuit Judge:

Mr. Foreman and gentlemen of the jury: I am asked to charge you:

I. "That when a promissory note matures, it is necessary to present it to the maker for payment, protest it for non-payment, and give notice of such protest to the endorser, before he can be made liable upon it, and that, therefore, the plaintiff in this action must prove that at the time the note in suit became payable, that is, on the third day after its maturity, he presented it, or caused it to be presented, to D. A. Allen for payment, had it protested for non-payment, and gave notice of such protest to the defendant, George S. Wilson, before he can recover against the said George S. Wilson." Well, I so charge you, gentlemen.

II. "That if the jury believe from the evidence that the plaintiff accepted the notes without endorsement in payment of the debt due on the Beacham note and mortgage, any subsequent promise by the defendant to pay the notes was without consideration and void." I refuse to charge you that, gentlemen, in those words, but will modify it in these words: The words interpolating made upon another and separate contract, that if the jury believe that the plaintiff accepted the notes without endorsement in payment of the Beacham notes and mortgage upon a separate contract by the defendant, then the consideration is void. If the agreement was part and parcel of the transaction leading up to the endorsement, then this endorsement should be signed. Then the endorsement is as much a part of the transaction as anything else.

III. "That if the jury believe that Brown purchased the note before any endorsement was made upon it, then the fact that Wilson afterwards told him the endorsement was all right would not now estop Wilson from claiming that

the endorsement was not authorized by him." I refuse to charge you that. I charge you as follows: That if the jury believe that Mr. Brown purchased the note before any endorsement was made upon it, when such endorsement was not to be made originally and was not part of the transaction, then the fact that Mr. Wilson afterwards said it was all right would not now estop Wilson.

Well, gentlemen, if you and a party enter into a contract, and he signs and you do not, and you write to somebody else to sign for you, and after returning you say that is all right, I did not do it myself, but it is all right, it becomes as binding as if he had done the writing himself. If you find that Mr. Frank Wilson was authorized by Mr. George Wilson, or it was the usual custom for him to sign for Mr. George Wilson, and that he did not need any special authority for this particular occasion, if at the time he signed it for Mr. George Wilson he was complying with a custom that had grown up, and he signed it, and it was afterwards ratified by Mr. Wilson, it would be as binding as if Mr. Wilson had signed it himself.

Now, suit is on a promissory note. A note carries on its face a consideration, so much so that when it is assigned to a third person, the original party will not be allowed to attack it. The plaintiff says by reason of such endorsement the defendant undertook to assume the debt of the other party. Now, you will remember what was said, and it is for you to say what they meant. The defendant says he did not become the endorser, and that it was not endorsed by him or by his authority, but by Mr. Frank Wilson, a clerk in his store, and that he so told Mr. Brown; and in reply to this the plaintiff says that, although it is true that Mr. Frank Wilson did sign, the defendant afterwards came into the office and said that it would be all right, and really assumed the debt. The defendant denies that. Now, did Mr. Brown take this note on the faith of Mr. Wilson paying it? Was this a part of the transaction, and was Mr. Brown's statement a true one, or Mr. Wilson's statement

40—45

true? That is a matter of evidence, gentlemen, for you to decide. Where a note is in the hands of a bank, notice of protest must be given, else the right of action will be gone. This is given to fix the liability on the endorser, and to keep the bank, or whoever has possession of the note, from being liable to the party who put it there; but such notice is not necessary to the maker, because the law·says that he gave it with the understanding and with the notice that it would be due at that particular time, and that he knew that it would be there. But if the party assumes the liability, the mere primary obligation, he thus assumes the payment of the note, and the name of the payee of the note sued on, a notice of protest would not necessarily relieve the party. Of course, if the defendant was liable as an endorser simply, we may infer from the testimony, if there is any testimony to that effect, that such statement or protest was made, but you must have some evidence of it, gentlemen; it must be so stated to you that you can legitimately infer it. Now, who are you to believe? The testimony is all before you. The law says that where there is a conflict of testimony, it is for you to reconcile that conflict, and say who is mistaken and who is not mistaken. If there is a direct contradiction, it is for you to say who you will believe. The law says that when one endorses a note, it is presumed it is for a valuable consideration. Now, you heard all the testimony here. It is all a question of fact for you. I am not allowed to charge you on facts. I give you the law, and you apply the facts to the law, and find your verdict accordingly. If you find for the plaintiff, you will find for the plaintiff so much, making a lump sum; and if you find for the defendant, say we find for the defendant.

The jury found a general verdict for the plaintiff, and judgment was entered thereon against George S. Wilson only. The defendant then made a motion for a new trial on the minutes of the Court on the ground that the verdict was a general one against all the defendants, when the

record showed that only the defendant, Wilson, had been served with the summons and complaint, and also on the ground that the jury had disregarded the charge of the Court, there being no testimony that the note had been protested for non-payment, and the Court having charged that protest was necessary to bind the defendant.

His Honor reserved his decision, but subsequently filed an order refusing the motion, but assigning no reason for his refusal. Within ten days after the rising of the Court the defendant gave notice of his intention of appeal from the rulings and charge of the Judge on the trial, and within ten days after notice of the filing of the order refusing a new trial, gave notice of his intention to appeal from said order, and within the time as extended by counsel, served this case and exceptions.

1. Because it was error in his Honor to refuse the second request to charge submitted by the defendant, which was as follows: II. "That if the jury believe from the evidence that the plaintiff accepted the notes without endorsement in payment of the debt due on the Beacham note and mortgage, any subsequent promise by the defendant to pay the notes was without consideration and void."

2. Because his Honor erred in refusing to charge the third request submitted by the defendant, which was as follows: III. "That if the jury believe that Brown purchased the note before any endorsement was made upon it, then the fact that Wilson told him the endorsement was all right would not now estop Wilson from claiming that the endorsement was not authorized by him."

3. Because his Honor erred in charging the jury as follows, viz: "If you find that Mr. Frank Wilson was authorized by Mr. George Wilson, or it was the usual custom for him to sign for Mr. George Wilson, and that he did not need any special authority for this particular occasion, if at the time he signed it for Mr. George Wilson he was complying with a custom that had grown up, and he signed it

and it was afterwards ratified by Mr. Wilson, it would be as binding as if Mr. Wilson had signed it himself."

4. Because his Honor erred in refusing the motion for a new trial, when the verdict was a general one against all the parties, and it appeared from the record that only the defendant, George S. Wilson, was served with the summons and complaint.

5. Because it was error in his Honor to refuse the motion for a new trial after he had charged the jury that it was necessary for the plaintiff to have the note protested in order to bind the defendant, and when there was no testimony that the plaintiff had the note protested, and no claim by him that he had it protested, even if his Honor erred in said charge, it being the province of the Supreme Court, and not of the jury, to correct errors of law made by his Honor.

6. Because his Honor erred in overruling the demurrer and motion to dismiss the complaint made by the defendant, there being no allegation in the complaint that the plaintiff caused the note to be protested when payment was refused by the maker, especially when he charged the jury that such protest was necessary to bind the defendant.

7. Because his Honor erred in modifying the second and third requests to charge submitted by the defendant.

The following is the report of the case by the Circuit Judge:

The summons, complaint, and answer show the issues made by the pleadings. It appeared, on motion for a new trial, that process was served upon Mr. George S. Wilson alone, who was sued as a member of the firm of Wilson & McNeill. At the trial, and before the jury retired, requests to charge were handed to the Court. He refused to charge the matters requested by the plaintiff referring to the matter of notice, presentment, etc., and, indeed, if such matter was covered at all in the charge, it was not in the language of the request to charge tendered by the plaintiff, and as re-

fused by the Court; and as the verdict was for the plaintiff, who, of course, has not appealed, this matter is not of importance. The defendant handed up certain requests which were all substantially charged as requested, the first prayer in the very words used in it. The second request was modified, or rather made more accurate and strengthened by the interpolation of the words "made upon another and separate contract," destroy a continuation of the same line and idea, and being a matter of reference to what had gone before as fully and completely as if the word "so" had been written before the word made. The idea expressed was, that the subsequent promise would lack consideration. After the same manner the third prayer was charged, the words "when such endorsement was not to be made originally," were interposed between the words "it" and "then." After the charge, but before the jury went out, when the Court turned around and asked counsel was there anything more, one of the attorneys for the plaintiff asked to read some authority on the quality of notice, etc., required, but the Court indicated that no further authority was required upon that point. No further matter was called to the attention of the Court, whereupon the record was given to the jury, and they retired.

The jury brought in a verdict for the plaintiff, whereupon a motion for a new trial was duly noticed upon the minutes of the Court. Counsel for defendant commenced the argument for the motion by saying, that although the Court had charged the jury as requested by the defense, the verdict of the jury had not been responsive to it, that there had been no evidence of protest, etc., nor sufficient evidence of endorsement. Continuing, and as a second ground, he argued, that although only George Wilson was served, the verdict was against all the defendants, and judgment would be entered against all. In answer to the argument for defendant, counsel for the plaintiff stated that, so far as the entry of judgment against all was concerned, that they would not enter up judgment against all. So far as

the verdict was concerned, it was responsive to the evidence, which was sufficient to sustain it; that the jury had a right to draw the conclusion from the evidence; that Wilson had written or ratified the endorsement, and that proper presentment and notice had been introduced of the dishonor of the note.

Counsel in answer and counsel in reply, at different times during the argument, began to discuss the law of notice as charged, at the request of defendants, but the Court, each time, indicated that he stood by the charge, and did not desire to hear anything more on that point. I took the papers and considered the matter. The sufficiency of the evidence upon the subject of the alleged endorsement by Mr. Wilson alone was the only point in doubt in my mind, but, recalling the evidence, I concluded, as there was a conflict in the testimony—evidence on both sides—the jury had a right to conclude as to the truth of the matter. I overruled the motion for a new trial. I believed then, as I do now, that the verdict of the jury was, substantially, right and proper, and that the plaintiff had proved his case. Believing this, I could not set it aside and grant a new trial upon the ground that the verdict was not responsive to the charge. It is to be noted that there was no allegation urged by defendants upon the motion that there was any error in the charge to the jury. (1) If the facts were in the possession of the jury to find, and the finding was responsive to the charge, was the charge upon the point, charged and excepted to, error? If it was not error, the motion should not have prevailed, and if there was any doubts upon the point, the fairer way was to let the error fall where it belonged, upon the Judge who charged it, and not upon the jury who followed his directions. (2) Was the refusal to set aside the verdict, upon the ground that it was too general, error? These are substantially the questions.

*Messrs. Graydon & Graydon*, for appellant.

*Messrs. Frank B. Gary* and *M. P. DeBruhl*, contra.

Jan. 9, 1896.   The opinion of the Court was delivered by

ACTING ASSOCIATE JUSTICE EARLE.   This is an action
on a promissory note made by Abbeville Manufacturing
Company to Wilson & McNeill, the defendants above
named, and endorsed by them to the plaintiff.   George S.
Wilson and John McNeill were partners, trading under said
firm name of Wilson & McNeill.   George S. Wilson was
alone served with the summons and complaint herein.

The cause was heard by his Honor, Judge Buchanan,
and a jury, and a general verdict was rendered against the
defendants for the amount due upon said note, and judg-
ment has been entered thereon against the said George S.
Wilson.

From this judgment he appeals to this Court upon excep-
tions to his Honor's charge to the jury, and upon his re-
fusal to charge certain requests submitted by appellant,
which will not be set forth in this opinion; but the excep-
tions, and also the report and charge of his Honor, the Cir-
cuit Judge, will appear in the report of this case.

As to the first exception: His Honor refused the second
request to charge, as submitted by the appellant; but
charged the jury: "If the agreement was part and
parcel of the transaction leading up to the endorse-
ment, that the endorsement should be signed, then
the endorsement is as much a part of the transaction as
anything else."   We find no error here.   If the note pay-
able to order is delivered for value without endorsement,
the holder would have the equitable title to the note, and
by proper proceedings could compel the proper endorse-
ment to be made according to the agreement of the parties
(Story on Bills, sec. 201).   If the endorsement should be
made after delivery, in pursuance of a prior arrangement,
this is no reason why such endorsement would not be bind-
ing upon the endorsers.   This exception is, therefore, over-
ruled.

The second exception is overruled upon the same ground.
If Wilson omitted to endorse the note when it was de-

livered to Brown for value, then he was in duty bound to endorse it upon demand; and if such demand was made upon his clerk, who endorsed it without authority, and, upon being notified of the same by Brown, he replied, "It is all right," this was a ratification of the endorsement made by his agent.

The third exception is also overruled. His Honor, in his charge to the jury, stated in substance the sound proposition of law, that if an agent performs an act according to his usual course of dealing, and the act is thereafter ratified by the principal, it will be binding upon the principal.

The fourth exception makes the point that a new trial should have been granted upon the ground that the verdict was against all of the defendants named upon the record, whereas only the appellant was served with the summons and complaint. This exception will not avail the party who was duly served, although the judgment would have been void against the defendants who were not served. It is a good judgment against the appellant, and even though it would have been void against the other defendants, if it had been entered up in conformity with the verdict, the appellant cannot assign for error matters that do not prejudice him, but affect other parties who are not before the Court. Besides, the Code of Procedure, sec. 286, provides that: "Upon receiving a verdict the clerk shall make an entry in his minutes specifying the time and place of the trial, &c. * * * If a different direction be not given by the Court, the clerk must enter judgment in conformity with the verdict." But we find from the report of his Honor, that when it was brought to his attention by counsel for the appellant, that although only the appellant was served, the verdict was against the defendants, and judgment would be entered against all, the counsel for the plaintiff stated, "that so far as the entry of judgment against all was concerned, he would not enter up judgment against all;" and in this his Honor seems to have acquiesced.

There seems, then, to have been a tacit understanding that the judgment should be entered up only against the appellant; and we think that while there was no formal order signed by the Judge to that effect, what did occur was sufficient direction to the clerk to enter judgment as proposed by the plaintiff's attorney.

The fifth exception complains of error on the part of the Circuit Judge in refusing to set aside the verdict, upon the ground that the jury refused to follow his directions. It is true, that when a jury disregards the instructions of the Court, the verdict should be set aside, even if the instructions were clearly erroneous (*Dent* v. *Bryce,* 16 S. C., 1); but it does not appear to our satisfaction, that the verdict is not responsive to the charge of his Honor, the presiding Judge. All of the testimony is not before us, and his Honor says, in his report, that the verdict "was responsive to the evidence, which was sufficient to sustain it. * * * I believed then, as I do now, that the verdict of the jury was substantially right and proper. Believing this, I could not set it aside and grant a new trial upon the ground that the verdict was not responsive to the charge." Besides, it is not our province to review the facts or to decide upon the sufficiency of testimony in a law case. This exception is, therefore, overruled.

The seventh exception is overruled for the reasons stated as to the first and second exceptions.

As to the sixth exception, it does not appear in the "Case" that any "demurrer and motion to dismiss the complaint" was made by the appellant, and, under the well established rule, it is not incumbent upon this Court to consider matters which appear only in the exceptions. But as it has been earnestly requested by counsel that we intimate an opinion as to whether or not it is necessary to protest a promissory note, in order to bind an endorser, we will not decline to do so, especially as this may be a matter of some public interest.

It is clear, that at common law, it was never deemed

necessary to protest a promissory note. Judge Story, in his work on Promissory Notes, sec. 297, says: "But in cases of promissory notes, by the English and American commercial law, no protest is required to be made upon the dishonor thereof." In *Burke* v. *McKay*, 2 How. Sup. Ct. Rep., 71, Mr. Justice Story, as the organ of the Court, said: "In the first place, by the general law merchant, no protest is required to be made upon the dishonor of any promissory note, but it is expressly confined to foreign bills of exchange. This is so well known that nothing more need be said upon the subject than to cite *Young* v. *Bryan*, 6 Wheat. R., 146, where the very point is decided." In *Young* v. *Bryan*, Chief Justice Marshall, in delivering the opinion of the Court, says, that all that was incumbent upon the holder of a promissory note was to give due notice to the endorser; that no protest of a promissory note or inland bill of exchange was necessary. Is such protest necessary under the statute? The statute of 3 and 4 Anne, c. 9, was made of force in this State in A. D. 1712, and is now incorporated in the General Statute of 1882, sections 1290, 1292, 1293, 1294, and 1295 (1393, 1394, 1395, 1396, Rev. Stat.); and it is contended by counsel that such protest is necessary under the terms of this statute. Let us inquire, in the first place, what interpretation was given to this statute by the English Courts; and, in the second place, how it has been construed in this country.

Mr. Chitty, in his work on Bills, p. 500, says: "The Act only gives an *additional* remedy, and does not take away the common law one; and, therefore, it is not necessary to protest, it being in all cases of *inland* bills sufficient to give notice of non-payment; and the holder can claim interest from the drawer, although there is no protest." And the same author says, at pages 364, 365: "At common law, no inland bill could be protested for non-acceptance, but by Statute 3 and 4 Anne, c. 9, s. 4, a protest was given, in case of refusing to accept in writing any inland bill amounting to the sum five pounds, expressed to be given for value

received, and payable at days, weeks or months after date,
in the same manner as in the case of foreign bills of ex-
change, and for which protest there shall be paid two shil-
lings and no more.   It has been supposed that this protest
must be made, in order to entitle the holder to demand of
the drawer or endorser costs, damages and interest; but in
practice the plaintiff recovers interest against the drawer
or endorser of an inland bill, on proof of due notice, with-
out proving protest; and it has been recently decided that
a protest is not essential to the recovery of interest.   If the
bill be of the above description, and under the amount of
twenty pounds, the holder is certainly entitled to the above
accumulative remedy, though no protest was made." *Win-
kle* v. *Andrews*, 2 Bar. & Ald., 696, was an action against
a drawer of an inland bill, and a rule *nisi* was obtained to
strike out the interest from the verdict, on the ground that
there had been no protest; but upon showing cause, the
Court held that the want of a protest afforded no ground
for disallowing interest, where notice of dishonor of the bill
had been duly given; that the object of the Statutes 9 and
10, W. 111, and 3 and 4 Anne, c. 9, s. 4, was to give inte-
rest, damages and costs, in cases in which it was supposed
that they were not recoverable at common law, not to de-
prive a plaintiff of them in any case in which the common
law would give them; that the fifth section, containing the
words of deprivation, was by way of proviso only, to qualify
the additional benefit that the Statutes of Anne and Wil-
liam III. were supposed for the first time to give; that the
proviso in the eighth section contained words to secure the
plaintiff all his common law rights, and that the right to
damage was a common law right; that it was upon this
principle only that the constant allowance of interest, when
there had been no protest, could be explained; that the fifth
section contained words to annul parol acceptances.   And
in *Rex* v. *Meggott*, Eyrie, C. J. of K. B., held that they had
that effect; that that notice was corrected in *Lumly* v. *Pal-
mer*, 2 Stra., 1000, upon the principle now adopted by the

Court; that the fifth section of 3 and 4 Anne, c. 9, deprived
a party of no remedy he had at common law; that that case
must be considered as having virtually overruled *Harris* v.
*Benson*, 2 Stra., 910, Trinity Term, 5 Geo. II.; and from
that time, from anything which appears to the contrary,
parol acceptances had been held binding, and interest had
been allowed against the drawers and endorsers of all in-
land bills; but no instance could be shown in which any
such bills had been protested. (Bayley on Bills, 5 ed., 263,
n. 9.)

Upon this subject Chan. Kent, in his Commentaries, 3
vol., p. 93, says: "On inland bills no protest was required
by the common law, and it was made necessary in England
in certain cases by the Statutes 9 and 10 Wm. III. and 3
and 4 Anne; and yet, notwithstanding the language of the
statutes, it had long been the settled rule and practice not
to consider the protest of an inland bill as necessary or ma-
terial." To the same effect is Dan. on Negotiable Instru-
ments, vol. 2, pp. 1 and 2. The statute of Mississippi is
similar to ours, and concerning that statute the Supreme
Court of the United States, in the case of *Bailey* v. *Dozier*,
6 How., 29, said: "The statute of Mississippi is taken, sub-
stantially, from 9 and 10 Wm. III., c. 17, amended by the
3 and 4 Anne, ch. 9, under which it has always been held
by the courts of England, that the action at common law
was not thereby taken away, but that an additional remedy
was given, by which the holder could recover interest and
damages on an inland bill, in cases where he was not enti-
tled to them at common law; and if he chose to waive the
benefit of the statute, he might still recover the amount
due on the bill, by giving the customary proof of default
and notice (2 Ld. Ryam., 992; s. c., 1 Salk., 131, 6 Mod.,
80; 2 Bar. and Ald., 696; Chitty on Bills, 466)." In *Flem-
ing* v. *McClure*, 1 Brev., 433, the Court said: "The cus-
tom among merchants with us, in regard to bills of ex-
change, is the same which exists in England, as to protests
and notices of non-acceptance and non-payment, and must

be governed by the same rules. * ·* *. In the case of foreign bills, a protest is universally necessary, whether for non-acceptance or non-payment. It is an essential part of the custom of merchants, and is requisite, not merely on account of damages and interest, but also on account of the principal sum. In respect to inland bills, it is only necessary on account of damages and interest, and is founded on the statutes of 9 ánd 10 Wm. III., c. 17, and 3 and 4 Anne, c. 9."

In the case of *Payne, endorsee of a promissory note*, v. *Joseph Winn, endorser*, 2 Bay, 374, it was held that "the want of a formal protest by a notary, in this case, was no bar to the plaintiff's recovery against the endorser. A protest does not raise any new debt or create any further responsibility on the parties to a bill or note, but only serves to give formal notice that a bill or note is not accepted or paid. This protest, by common law, is absolutely necessary on every foreign bill of exchange, but it is not necessary on any *inland bill of exchange*, either by the common law or by any statute of force in this country, except to entitle a party to interest and damages." In *Thompson* v. *Bank*, Riley's Law Cases, 81, the Court said: "The question here arises on a promissory note; protest for non-payment is not necessary; it is altogether superfluous. A demand of payment was necessary, and to enable it to be proved it is necessary to employ some one to make it, but a notary was not requisite; any other individual would have sufficed to make the demand, or to make the inquiries necessary to giving notice."

We, therefore, hold that it is not necessary to protest a promissory note in order to make the endorsers liable, unless the note is made by a person residing in one State and payable to a person residing in another State. In that case, it is considered in the light of a foreign bill of exchange, requiring protest. (*Cape Fear Bank* v. *Stinemets*, 1 Hill, 44.)

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE.   I prefer to concur in the result.   I do not think the question of the necessity of a protest of the note here considered necessarily arises in this appeal, and upon that question I do not express any opinion.