Argued September 24, modified and remanded November 25, 1919.

## SIMPSON v. FIRST NAT. BANK.

(185 Pac. 913.)

**Bills and Notes—Pleading in Action Against Bank as Alleged Indorser.**

1. Action against bank to recover balance on bankrupt's note, in which note, prior to maker's bankruptcy, the bank, as agent for plaintiff, had invested her money, and which note had been delivered by bank to plaintiff without indorsement and with payee's name left blank, the complaint, averring that "plaintiff is entitled to the indorsement of defendant * * upon said note," and that the bank, on account of its negotiation and sale of the note to plaintiff, was liable as indorser, *held* to state a claim based on the note and not, upon any independent oral promise of guaranty or express warranty.

**Pleading—Construction Against Pleader on Demurrer.**

2. Upon demurrer to complaint, language of complaint must be construed most strongly against pleader.

**Banks and Banking—Liability of Bank in Making Loans of Depositor's Money.**

3. If a bank is authorized by a depositor to loan the latter's money, the bank for that purpose acts as an agent; and, if it lends the money in good faith and uses due diligence, it is not ordinarily liable for any losses that occur.

**Guaranty—Necessity or Words Showing a Contract.**

4. While the word "guaranty" is not essential to create a contract of guaranty, and the word "warrant" is not indispensable for the creation of an express warranty, and while there is no particular form or expression necessary to create a strict guaranty or a pure warranty, still the language employed by the parties must in some way indicate an intention to contract.

Bills and Notes—Transfer of Note With Blank Space for Payee's
Name.

5. Under the law-merchant, when maker left a blank for name
of payee and delivered the instrument in that condition to another
person for value, the person to whom it was delivered, or any sub-
sequent holder, could insert his own name or that of a transferee as
payee.

Statutes—Construction of Negotiable Instruments Law.

6. Rules of law-merchant, while not controlling, are at least
helpful when construing the negotiable instruments law.

Courts—Rules of Decision.

7. Opinion of court must be read in the light of the facts dis-
cussed by the court.

Bills and Notes—Prima Facie Authority to Fill in Blank Space.

8. Where maker gave bank a note leaving blank space for name
of payee, and bank, without filling in blank space, transferred note
to depositor whose money it had been authorized to loan out, de-
positor was a "person in possession" within Section 5847, L. O. L.,
giving "person in possession" *prima facie* authority to fill in blank,
and had *prima facie* authority to fill blank by writing her own name
or that of the bank.

Bills and Notes—Filling in Name of Payee in Blank Space.

9. Where maker gave bank a note leaving blank space for name
of payee, with authority to bank to insert its own name, and bank,
without filling in blank, transferred note to depositor, depositor's
authority to fill in blank, under Section 5847, L. O. L., was limited
to inserting name of bank, since the blank space under the statute
must be filled in "strictly in accordance with the authority given."

Action—Transferee's Remedy in Compelling Transferror to Indorse
Note is in Equity.

10. Where bank, having received note from maker with authority
to insert its name in blank space left for name of payee, trans-
ferred note without inserting name or indorsing it, transferee, upon
inserting bank's name as payee, could not in action against bank
on note, compel bank to indorse note; transferee's remedy being by
suit in equity and not law action.

Action—Distinction Between Law and Equity Actions.

11. In Oregon the distinction between suits in equity and actions
at law is preserved.

Appeal and Error—Remand of Case to Permit Plaintiff to Amend
Complaint.

12. Under Section 390, L. O. L., as amended by Laws of 1917,
page 126, where plaintiff, who in law action on note sought to com-
pel defendant transferror to indorse note, could so amend complaint
as to entitle her to such relief in equity, Supreme Court in sustain-
ing action of lower court in sustaining demurrer to complaint will
remand cause with permission to plaintiff to amend complaint.

**Bills and Notes—Compelling Indorsement of Note Transferred by Delivery.**

13.    Under Section 5882, L. O. L., and even in absence thereof, payee who transfers note for value without indorsing it can be compelled by transferee to indorse note.

**Statutes—Construction of Negotiable Instrument Act.**

14.    Common-law precedents and discussions by text-book writers of the rules of the law-merchant are valuable in ascertaining the meaning of negotiable instrument act.

**Bills and Notes—Rights of Transferee.**

15.    Under Section 5882, L. O. L., transferee of note is vested, not only with the equitable, but also with the legal, title although he cannot, until indorsement, be treated as a holder in due course.

**Bills and Notes—Transferee's Right to Unqualified Indorsement.**

16.    Section 5882, L. O. L., giving transferee the right to indorsement of transferror, entitles transferee to. an unqualified indorsement unless the parties agreed that the indorsement should be qualified.

**Equity—Completion of Note Transferred Unindorsed and With Blank Space for Payee's Name.**

17.    Where bank received note from maker with authority to insert its name in space left blank for name of payee, and transferred note without inserting name or indorsing note, bank knew that unless its name appeared as payee transferee could not compel payment by maker, and equity will hold that to be done which ought to be done, and direct the note to be completed in conformity with the intention of the original parties.

**Appeal and Error—Presumption of Truth of Facts Stated in Complaint on Demurrer.**

18.    Supreme Court, in reviewing action of lower court in sustaining demurrer to complaint, will assume that the facts are as stated in complaint.

From Douglas: JAMES W. HAMILTON, Judge.

Department 2.

The plaintiff is attempting to recover from the defendant the amount due on a promissory note on the theory that the bank is liable as an indorser to her, notwithstanding the fact that when she received the note from the bank the instrument contained an unfilled blank for a payee and the name of the bank did not appear in or on the note. The court sustained a demurrer to the amended complaint. The plaintiff

refused to plead further and thereupon a judgment was entered against her for the defendant's costs and disbursements. The plaintiff appealed.

Assuming, as we must, that the facts are as stated in the amended complaint, the history of the note sued upon is as follows: On August 15, 1907, the defendant, a corporation engaged in the banking business, loaned $1,000 to Mrs. M. Josephson and she gave to the bank her promissory note, a copy of which follows:

"1000.              Roseburg, Oregon, Aug. 15, 1907.

"Demand after date, without grace, for value received, I promise to pay to —— or order One Thousand Dollars, with interest from date at the rate of 8 per cent per annum until paid, principal and interest payable in U. S. Gold Coin of the present standard value; and in case suit be instituted to collect this note, or any portion thereof, I promise to pay such additional lawful sum as the Court may adjudge reasonable, as attorney's fees.

"Mrs. M. Josephson."

At the time of making the note the name of the payee was left blank, but, in the language of the complaint—

"it was intended and authority was given therefor to insert the name of the defendant herein."

On September 19, 1907, the plaintiff had about $1,200 on deposit to her credit in the bank and at that time the defendant through its officers suggested to her that she allow the bank to loan $1,000—

"of said money on deposit and represented to the plaintiff that it would be loaned by them to absolutely responsible parties, and for such time that should plaintiff have use for said money that the same would be available to her at any time after thirty days.

"That thereupon the defendant, through its officers, aforesaid, appropriated $1,000 of said deposits belonging to plaintiff herein and negotiated, set over and assigned to the plaintiff the said promissory note of said

Mrs. M. Josephson. That neither said bank nor its officers had notified the plaintiff herein as to how they had so invested said $1,000 for plaintiff until on or about the 1st of March, 1908, when plaintiff's bankbook was balanced and a voucher returned to her being the memorandum check made by said defendant bank showing that plaintiff was charged with said note of Mrs. M. Josephson.''

The bank continued to hold the note for the plaintiff and ''to attend to the collection of the same and of the interest thereon'' until January, 1914, when the bank delivered the note to the plaintiff with the information that the instrument belonged to her; and it is proper to state, too, that the plaintiff never saw the note prior to January, 1914, the time when she received the instrument from the bank, although as already stated she was informed by the memorandum check returned to her as a voucher on March 1, 1908, that the bank had invested $1,000 for her in the note of Mrs. M. Josephson.

Within a reasonable time after receiving the note from the bank the plaintiff ''filled in the name of defendant as payee of said note.'' While the bank had possession of the instrument as the agent of plaintiff, defendant presented it, from time to time, to the maker for payment but no part of the principal was paid and only a portion of the interest was paid.

The maker of the note was adjudicated a bankrupt at some time prior to January, 1914, and while the defendant had possession of the note ''as agent of said plaintiff.'' We infer from the complaint that the plaintiff presented the note to the trustee in bankruptcy; and it is affirmatively stated in the amended complaint that the claim ''was duly allowed and said bankrupt estate paid as dividends to plaintiff on ac-

count of said note the sum of $27.07 and no more."
The plaintiff brought this action to recover $1,356.44,
the balance due after deducting payments of interest
received from the maker of the note and the dividends
paid by the bankrupt estate.

Modified and Remanded.

For appellant there was a brief and an oral argument by *Mr. Albert Abraham.*

For respondent there was a brief and an oral argument by *Mr. Oliver P. Coshow.*

HARRIS, J.—The amended complaint was framed upon the theory that the bank was liable as an indorser on the note. The pleading recites that when the note was executed the name of the payee "was left blank"; and that the instrument was still in that condition when the plaintiff received it. The pleader tells about writing the name of the defendant in the blank and then avers that—

The "plaintiff is entitled to the indorsement of the defendant herein upon said note and was at all times so entitled to the same."

Again, we read in the amended complaint an allegation that the defendant had notice of the failure of Mrs. M. Josephson to make payment "and of the fact that it was liable as indorser and on account of plaintiff being entitled to its said indorsement as of said date of making said transfer to plaintiff." The following brief averment is a concise statement of the theory upon which the pleading was based:

"That on account of said negotiation and sale aforesaid to the plaintiff herein of said note by said defendant as aforesaid, the said defendant is liable thereon as indorser as aforesaid."

1. The demand for judgment includes not only the principal and interest due on the note, but also the sum of $100 which the plaintiff alleges is a reasonable sum to be allowed as attorney's fees for the collection of the debt.   Obviously, the claim asserted by the plaintiff in her pleading is based on the note and not on any independent oral promise amounting to a guaranty or an express warranty.

2. Counsel for the plaintiff now contends, however, that the amended complaint states enough to show that the defendant is liable to the plaintiff even though it is held that the bank cannot be charged in this proceeding as an indorser.   This contention proceeds upon the notion that the representations alleged to have been made by the defendant when its officers suggested that the plaintiff permit the bank to invest her funds for her amounted either to a guaranty that the bank would itself repay the lender if the borrower did not, or to an express warranty of the solvency of Mrs. Josephson: 5 C. J. 967.   It may be conceded that the bank might be held liable upon a contract of guaranty or warranty if it made such a contract: *Kiernan* v. *Kratz,* 42 Or. 474 (69 Pac. 1027, 70 Pac. 506); *Swenson* v. *Stoltz,* 36 Wash. 318 (78 Pac. 999, 2 Ann. Cas. 504). The sufficiency of the pleading was tested by a demurrer; the plaintiff was content to stand upon her pleading notwithstanding the ruling of the trial court sustaining the demurrer; and consequently in this court, as in the trial court, when examining the amended complaint the language found in it must be construed most strongly against the pleader: *Darr* v. *Guaranty Loan Assn.,* 47 Or. 88, 93 (81 Pac. 565); *Fishburn* v. *Londershausen,* 50 Or. 363, 375 (92 Pac. 1060, 15 Ann. Cas. 975, 14 L. R. A. (N. S.) 1234).

3. The amended complaint does not state a cause of action arising out of any oral promise made by the defendant unless it can be said that the representations attributed to the officers of the bank amount to such a promise. If a bank is authorized by a depositor to loan the latter's money, the bank for that purpose acts as an agent, and if it lends the money in good faith and uses due diligence it is not ordinarily liable for any losses that occur: 7 C. J. 719. We cannot tell from a reading of the amended complaint whether the representations are to be taken merely as limitations upon the authority of the agent or were intended as a guaranty on the part of the bank to repay if the borrower did not or as a warranty of the solvency of the borrower, or otherwise. If the representations are considered as limitations upon the authority of the agent, the complaint fails to state a cause of action, for the reason that there are no appropriate allegations showing either bad faith or a lack of diligence on the part of the bank. For aught that appears in the pleading Mrs. M. Josephson may have been solvent on August 15, 1907, as well as in March, 1908, and even for a long time afterwards; and, indeed, it may be that at any time in 1907 or 1908 all persons would have considered the loan a safe and profitable investment. It is true that Mrs. M. Josephson was adjudicated a bankrupt, but it is also true that the pleading does not tell us when she became a bankrupt. The inferences to be drawn from the amended complaint are that the maker of the note was not adjudicated a bankrupt until some time after January, 1913. Manifestly, the pleading does not sufficiently state a cause of action arising out of any bad faith or neglect of the agent. Nor does the amended complaint contain enough to enable us to

say that it states a cause of action arising out of any fraud practiced by the bank.

4. While the word "guarantee" is not essential to create a contract of guaranty and the word "warrant" is not indispensable for the creation of an express warranty, and while there is no particular form or expression necessary to create a strict guaranty or a pure warranty, still the language employed by the parties must in some way indicate an intention to contract: 20 Cyc. 1412. See, also,: 40 Cyc. 493. The amended complaint does not contain enough to show either a contract of guaranty or an express warranty of the solvency of the borrower. In brief, the amended complaint does not state sufficient facts to make the defendant liable on account of any bad faith or neglect in loaning the money or on account of any fraud or on account of any contract of guaranty or warranty. We now come to the questions arising out of the theory of the plaintiff that the bank is liable on the note as an indorser of it.

When we seek to ascertain what rights, if any, the plaintiff may have arising out of the note itself, as distinguished from any cause of action that she may have on account of any oral promise made by the officers of the bank, we may with propriety make two inquiries: (1) What right, if any, can the plaintiff assert against Mrs. M. Josephson, the maker of the note? And (2) what right, if any, can the plaintiff claim and enforce against the bank.

5. Under the rules of the law-merchant when the maker of a note left a blank for the name of a payee and delivered the instrument in that condition to another person for value, as was done here, then the person to whom the note was delivered or any subsequent holder could insert his own name, or that of a

transferee, as payee. Some of the adjudications place the rule upon the ground of agency; some rely upon the theory of estoppel; and others rest their conclusions upon principles of both agency and estoppel. It is not now necessary to investigate the reasons supporting the rule, but it is enough to say that the delivery of a note with an unfilled blank for the name of a payee gave to a *bona fide* holder implied but absolute authority to fill the blank. Indeed, so absolute and unqualified was this implied authority, that even though the maker intrusted his note to an agent with directions to take it to A and if instead of taking it to A, the agent, contrary to the express instructions of the maker, took it to B and for value delivered it to B, then B had authority to insert his name as payee and as such could recover on the note from the maker, notwithstanding the fact that the agent never accounted to the maker for the funds received from B. Nor did it make any difference under the rules of the law-merchant, so far as concerned the right of B to recover from the maker, whether the agent inserted the name of B as payee before exhibiting the note to B or whether the instrument was delivered to B with the blank unfilled. The existence of a blank space for the name of a payee did not of itself put the holder on inquiry. Of course if at the time of the delivery of the note to B he had knowledge of the instructions given by the maker to the agent, B would not have been an innocent holder and a different rule would apply: *Thompson* v. *Rathbun,* 18 Or. 202 (22 Pac. 837); *Cox* v. *Alexander,* 30 Or. 438, 446 (46 Pac. 794); *Keyser* v. *Warfield,* 100 Md. 72, 81 (59 Atl. 189); *Ives* v. *Farmers' Bank,* 2 Allen (Mass.), 236, 240; *Schooler* v. *Tilden,* 71 Mo. 580; *Seay* v. *Bank of Tennessee,* 3 Sneed (Tenn.), 558 (67 Am. Dec. 579); *Business Men's*

*League* v. *Sragow,* 153 N. Y. Supp. 231; *Vander Ploeg*
v. *Van Zuuk,* 135 Iowa, 350 (112 N. W. 807, 124 Am.
St. Rep. 275, 13 L. R. A. (N. S.) 490); 8 C. J. 183, 186;
3 R. C. L. 874, 881. See the extensive notes in 5
B. R. C. 702 and in 13 L. R. A. (N. S.) 490. The ad-
judications, with rare if any exceptions, hold not only
that a *bona fide* holder may write his own name in the
blank as payee, or he may, if he chooses, insert the
name of his transferee. The courts have too with but
few, if any, exceptions ruled that where the first holder
of a note, containing a blank for the name of a payee
and payable to order, indorses the note and then trans-
fers it, the transferee can complete the instrument by
writing the name of the first holder in the blank as
payee: *First Nat. Bank* v. *Johnston,* 97 Ala. 655, 665
(11 South. 690); *Elliott* v. *Chestnut & Townsend,* 30
Md. 562; *Aiken* v. *Cathcart,* 3 Rich. L. (S. C.) 133 (45
Am. Dec. 764); *Fretwell* v. *Carter,* 78 S. C. 531, 535,
(59 S. E. 639).

6. If whatever rights Grace Simpson may have
against Mrs. M. Josephson were wholly to be deter-
mined and governed by the rules of the law-merchant
then under the rule which prevailed in this jurisdiction
Grace Simpson could not have sued the maker of the
note unless the blank in the instrument were filled with
her name or that of some other person as payee, for
the reason that she could not have sued and recovered
upon an incomplete instrument: *Thompson* v. *Rath-
bun,* 18 Or. 202 (22 Pac. 837); *Seay* v. *Bank of Ten-
nessee,* 3 Sneed (Tenn.), 558 (67 Am. Dec. 579); *First
Nat. Bank* v. *Johnston,* 97 Ala. 656, 664 (11 South.
620). In brief, under the rules of the law-merchant
Grace Simpson could, in the absence of knowledge of
special instructions given by Mrs. M. Josephson, have
filled the blank by writing in her own name as payee, or

in case she transferred the instrument to another person, she could have inserted the name of that transferee as payee; if the bank had indorsed the note and then delivered it to Grace Simpson, she could have inserted the name of the bank as payee; and to enable a recovery on the note by the holder against the maker it was essential that some person be named as payee for the reason that the instrument is incomplete unless some person is named as payee, and the words "or order" appear in the paper. These rules of the law-merchant, while not controlling, are at least helpful when construing the negotiable instruments law.

Section 5847, L. O. L., which corresponds with Section 14 of the uniform negotiable instruments law, reads thus:

"Where the instrument is wanting in any material particular, the person in possession thereof has a *prima facie* authority to complete it by filling up the blanks therein, and a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument, operates as a *prima facie* authority to fill it up as such for any amount. In order, however, that any such instrument, when completed, may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given, and within a reasonable time; but if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

7. This section of the negotiable instruments law has in the main reaffirmed the rules of the law-merchant: *State* v. *Mitton,* 37 Mont. 366 (96 Pac. 926, 127 Am. St. Rep. 732); *Diamond Distilleries Co.* v. *Gott,*

137 Ky. 585 (126 S. W. 131, 31 L. R. A. (N. S.) 643);
*Linthicum* v. *Bagby,* 131 Md. 644 (102 Atl. 997). In
some particulars, however, Section 5847, L. O. L.,
changes some of the rules of the law-merchant. It
must be remembered that we are not now dealing with a
case where the maker of a note intrusts the instrument
to his agent with directions on certain conditions to
fill a blank by writing in the name of a designated per-
son as payee, but contrary to instructions the agent
fills the blank by writing in the name of some person
other than the one designated by the maker and then
for value delivers the paper to such other person. In
some jurisdictions such a payee has been held under
the provisions of the negotiable instruments law to be
a holder in due course while in others a contrary con-
clusion has been reached: *Vander Ploeg* v. *Van Zuuk,*
135 Iowa, 350 (112 N. W. 807, 124 Am. St. Rep. 275, 13
L. R. A. (N. S.) 490); *St. Charles Sav. Bank* v. *Ed-
wards,* 243 Mo. 553 (147 S. W. 978); *Bowles Co.* v.
*Clark,* 59 Wash. 336 (109 Pac. 812, 31 L. R. A. (N. S.)
613); *Ex parte. Goldberg,* 191 Ala. 356 (67 South. 839,
L. R. A. 1915F, 1157); *Liberty Trust Co.* v. *Tilton,* 217
Mass. 462 (105 N. E. 605, L. R. A. 1915B, 144); *Brown*
v. *Rowan,* 91 Misc. Rep. 220 (154 N. Y. Supp. 1098).
See, also, *Herdman* v. *Wheeler,* 1 K. B. 361; *Lloyd's
Bank* v. *Cooke,* 1 K. B. 794 (8 Ann. Cas. 182); *Smith*
v. *Prosser,* 2 K. B. 735; and note in 5 B. R. C. 702.
See 8 C. J. 469. Nothing said in the opinion rendered
in *Bank of Gresham* v. *Walch,* 76 Or. 272 (147 Pac.
634), should be construed to mean that this court is
committed to the doctrine that under the negotiable in-
struments law the payee is never a holder in due
course. In that case, as in all other cases, the opinion
of the court must be read in the light of the facts dis-
cussed by the court. In *Bank of Gresham* v. *Walch*

the defense against the note was based upon representations made by the agents of the bank and the decision was controlled by those representations; and hence the opinion and all the language found in it must be read in the light of the fact that the agents of the bank made certain representations which constituted the very foundation of the defense made by the defendant there.

8, 9. It will be noticed that the person upon whom authority is conferred, by Section 5847, L. O. L., to complete the instrument is not referred to as the "holder" but as the one "in possession." And while it is not necessary to determine whether a mere agent to whom the maker has intrusted a note for delivery to some designated person is a person "in possession" within the meaning of Section 5847, L. O. L., which authorizes "the person in possession" to complete an instrument by filling up a blank, nevertheless all will no doubt admit that Grace Simpson is a "person in possession" within the meaning of the statute. It will also be noticed that the "person in possession" is only given *prima facie* authority to fill a blank and that the person filling the blank must do so "strictly in accordance with the authority given" before he can enforce the instrument against any person becoming a party to it prior to its completion. When the note of Mrs. M. Josephson came to Grace Simpson it contained a blank for the name of the payee, and hence she, as the "person in possession," possessed *prima facie* authority to fill the blank by writing in her own name or that of her transferee. But according to the allegation in the complaint the maker of the note "intended and authority was given therefor to insert the name of the defendant," and therefore, since the authority to fill the note was not set at large by the maker so that the name

of any holder could be inserted, but was limited so that only the name of the bank could be written in the blank, it follows that Grace Simpson was bound to insert the name of the bank as the payee in the note. A precedent squarely in point as to this phase of the discussion is furnished by *Tower* v. *Stanley,* 220 Mass. 429 (107 N. E. 1010). See, also, *National Investment & Security Co.* v. *Corey,* 222 Mass. 453 (111 N. E. 357); *Hartington Nat. Bank* v. *Breslin,* 88 Neb. 47 (128 N. W. 659, Ann. Cas. 1912B, 1008, 31 L. R. A. (N. S.) 130); *Johnston* v. *Hoover,* 139 Iowa, 143 (117 N. W. 277); *Vander Ploeg* v. *Van Zuuk,* 135 Iowa, 350 (112 N. W. 807, 124 Am. St. Rep. 275, 13 L. R. A. (N. S.) 490); *Exchange Bank* v. *Robinson,* 185 Mo. App. 582 (172 S. W. 628); *Equitable Trust Co.* v. *Lyons,* 72 Misc. Rep. 49 (129 N. Y. Supp. 79); 3 R. C. L. 875; Brannan's Neg. Inst. Law, 19. In other words, Grace Simpson came into possession of an incomplete note payable to "order" and one which she could not enforce against the maker unless it were first made complete by inserting the name of a payee and one which she as the "person in possession" could not make complete unless she inserted the name of the bank as payee "strictly in accordance" with the authority given by the maker; and, we may add, that we infer from the pleading that it was the intention not only of the maker but also of the bank that the name of the bank should be written in as payee. Thus far we have only considered the rights assertable by Grace Simpson against the maker of the note; and now it becomes necessary to inquire whether she can enforce any contract arising out of the note against the bank if it is deemed an indorser.

10. The plaintiff contends that she is entitled first to the indorsement of the bank on the note and then to a

judgment against the defendant for the balance due on the instrument. If the plaintiff is entitled to compel the defendant to indorse the note she can do so only by a suit in equity: *Fultz* v. *Walters*, 2 Mont. 165; 1 Daniel on Neg. Inst. (6 ed.), 744; Brannan's Neg. Inst. Law, 259.

11. In this jurisdiction the distinction between suits in equity and actions at law is preserved. The proceeding brought by the plaintiff is an action at law and not a suit in equity; and, since the court cannot compel an indorsement of the note in an action at law, but can do so only in a suit in equity, it necessarily follows that, since the amended complaint is in its present condition insufficient as a complaint in equity, the trial court correctly sustained the demurrer to the complaint even though it be assumed that the plaintiff is entitled in a proper proceeding to compel the bank to indorse the note. But it is said in Section 390, L. O. L., as amended by Chapter 95, Laws 1917, that—

"No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have a right to amend his pleading to obviate any objection on that account."

12. It is possible that the plaintiff can so amend her complaint as to entitle her to the indorsement of the bank and to a judgment against it as an indorser, and hence the cause will be remanded with permission granted to the plaintiff to amend her complaint within the authority of Chapter 95, Laws 1917: *Farmers' Loan & Trust Co.* v. *Brown*, 182 Iowa, 1044 (165 N. W. 70); *Brown* v. *Wilson*, 45 S. C. 519 (23 S. E. 630, 55 Am. St. Rep. 779, 780).

The plaintiff relies upon Section 5882, L. O. L., which corresponds with Section 49 of the uniform negotiable instruments law, is substantially like Sec-

tion 31 (4) of the English Bills of Exchange Act, 1882, and reads as follows:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferrer; but for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

13. It must be remembered that at the time when the bank transferred the note to Grace Simpson the instrument did not contain the name of a payee, although the note was payable to "order" and contained a space which was plainly intended as the place for the insertion of the name of some payee. If, when the note was transferred by delivery to the plaintiff, the name of the bank appeared in the note as payee, then by force of the express terms of the statute the plaintiff would be entitled to the indorsement of the bank: *Lawless* v. *State,* 114 Wis. 189, 192 (89 N. W. 891); and so, too, in the absence of a statute she could compel the bank to indorse the note: *Unterkarnscheidt* v. *Missouri State L. Ins. Co.,* 160 Iowa, 223 (138 N. W. 459, 45 L. R. A. (N. S.) 743); *Swenson* v. *Stoltz,* 36 Wash. 318 (78 Pac. 999, 2 Ann. Cas. 504); *Schoepfer* v. *Tommack,* 97 Ill. App. 562, 567; *Walters* v. *Neary,* 21 T. L. R. 146. It is true that many of the precedents and writers upon the subject do no more than to define the right of a transferee to the indorsement of the transferrer where the transferrer expressly agreed to indorse an instrument payable to his order but because of inadvertence, mistake or fraud failed to do so, and yet it is doubtful whether any of those precedents or writers can be regarded as authority for saying that the transferee

would not be entitled to the indorsement unless the transferrer expressly agreed to indorse: 1 Daniel on Neg. Inst. (6 ed.), 857; Byles on Bills (7 ed.), 157; 1 Parsons on Notes & Bills, 273; *Hughes* v. *Nelson,* 29 N. J. Eq. 547; Story on Promissory Notes, § 120; 1 Story's Eq. Jur. (13 ed.), § 99b; *Southard* v. *Porter,* 43 N. H. 380; *Brown* v. *Wilson,* 45 S. C. 519 (23 S. E. 630, 55 Am. St. Rep. 779). If the right to an indorsement must be predicated upon an agreement, it is more logical and certainly more consistent with the character, qualities and purposes of the paper dealt with to deduce from the character, qualities and purposes of such paper the conclusion that the agreement for the indorsement may, under the rules of the law-merchant, be implied; and that, therefore, if at the time of the transfer the parties are silent upon the subject of indorsement, then the law implies an agreement by the transferrer to indorse a negotiable instrument when it is made payable to his order: *Schoepfer* v. *Tommack,* 97 Ill. App. 562, 566; *Wade* v. *Guppinger,* 60 Ind. 376, 378; *Walters* v. *Neary,* 21 T. L. R. 146; *Hood* v. *Stewart,* 17 Session Cases (4th Series), 749, 761. In *Watkins* v. *Maule,* 2 Jac. & W. 237, 243, an oft-cited precedent, it was said:

"When a note is handed over for valuable consideration, the indorsement is mere form; the transfer for consideration is the substance; it creates an equitable right, and entitles the party to call for the form. The other is bound to do that formal act, in order to substantiate the right of the party to whom he has transferred it."

14. In *Ex parte Greening,* 13 Ves. Jr. 206, the court said that the transfer creates an equitable right and entitles the holder to call for the form "which it would be fraudulent to withhold." In some precedents the

central thought seems to be that the transferee is entitled to the indorsement of the transferrer so that the former may be vested with the legal title and thus be enabled to sue in his own name, while in others some emphasis is placed upon the idea that the transferee is entitled to have the negotiable character of the paper preserved. In case of an express agreement for an indorsement the transferee was of course entitled to compel the transferrer to perform his agreement: *Hughes* v. *Nelson,* 29 N. J. Eq. 547; *Southard* v. *Porter,* 43 N. H. 380. We are not called upon to determine the true reasons which underlie the rule which under the law-merchant gave to the transferee of paper payable to order the right to the indorsement of the transferrer. Common-law precedents and discussions by text-writers of the rules of the law-merchant are valuable, however, in ascertaining the meaning of the statute.

At common law the mere delivery of an indorsed instrument payable to the order of the transferrer only passed an equitable title with the result that, to enforce payment by the maker, the transferee was obliged to cause an action to be prosecuted in the name of the transferrer. A transfer without indorsement destroyed the negotiability of the paper and the transferee held it subject to whatever equities were available to the payer against the transferrer. With the adoption of the Codes, however, it was quite generally held that the transferee could sue in his own name, for the reason that he was the real party in interest notwithstanding the fact that the title transferred was equitable and subject to the defenses which the payer might have made prior to notice of the transfer: *Moore* v. *Miller,* 6 Or. 254 (25 Am. Rep. 518); *First Nat. Bank* v. *McCullough,* 50 Or. 508, 514 (93 Pac. 366,

17 L. R. A. (N. S.) 1105, 126 Am. St. Rep. 758); *Mc-Feron* v. *Doyens,* 59 Or. 366, 369 (116 Pac. 1063); *Baker* v. *Moran,* 67 Or. 386, 394 (136 Pac. 30); *First Nat. Bank* v. *Moore,* 137 Fed. 505 (70 C. C. A. 89); *Cornish* v. *Wolverton et al.,* 32 Mont. 456 (81 Pac. 4, 108 Am. St. Rep. 598); *Meuer* v. *Phoenix Nat. Bank,* 94 App. Div. 331 (88 N. Y. Supp. 83); *Jenkins* v. *Wilkinson,* 113 N. C. 532 (18 S. E. 696); *Pavey* v. *Stauffer,* 45 La. Ann. 353 (12 South. 512, 19 L. R. A. 716, 721); *Haskell* v. *Mitchell,* 53 Me. 468 (89 Am. Dec. 711); 8 C. J. 385.

15. The statute, Section 5882, L. O. L., declares in express terms that the transfer "vests in the transferee such title as the transferrer had therein," and hence by force of the statute itself the transferee is vested, not only with the equitable but also with the legal title, although the transferee cannot until indorsement be treated as a holder in due course: *Goodsel* v. *McElroy Bros. Co.,* 86 Conn. 402 (85 Atl. 509); Brannan on Neg. Inst. Law, 50; *Cantrell* v. *Davidson,* 180 Mo. App. 410 (168 S. W. 271); *Carter* v. *Butler,* 264 Mo. 306, 324 (174 S. W. 399, Ann. Cas. 1917A, 483); *Keel* v. *Construction Co.,* 143 N. C. 429, 434 (55 S. E. 826); *Manufacturers' Commercial Co.* v. *Blitz,* 131 App. Div. 17 (115 N. Y. Supp. 402); *Mayers* v. *McRimmon,* 140 N. C. 640 (53 S. E. 447, 111 Am. St. Rep. 879); *Goshen Nat. Bank* v. *Bingham,* 118 N. Y. 349 (23 N. E. 180, 7 L. R. A. 595, 16 Am. St. Rep. 765).

Inasmuch as the statute in express terms vests the transferee with the legal title and then declares that, in addition to acquiring all the title of the transferrer, the transferee acquires "the right to have the indorsement of the transferrer," it necessarily follows that this additional right is granted for the purpose of accomplishing some result besides the mere transfer of

the title; and since the only other reasonably assignable purposes relate to the negotiability of the paper and to the rights arising out of the contract of indorsement, it follows as another necessary conclusion that at least one of the purposes of the statute in granting the right to the indorsement was to preserve the negotiability of the paper. All will probably concede that one of the purposes was to preserve negotiability; but there may be room for debate as to whether the transferee can call for an unqualified indorsement and thus secure the most complete rights which an indorsement can create. The next inquiry brings us to a discussion of the kind of indorsement which the transferee can call upon the transferrer to make.

The statute, Section 5866, names five species of indorsement; special, blank, restrictive, qualified and conditional. For convenience, indorsements may be referred to as qualified or unqualified, and we shall confine the discussion to a consideration of whether the transferee is entitled to an unqualified indorsement or whether he must be satisfied with a qualified indorsement. The essential difference between a qualified and unqualified indorsement is found in the extent of the liability imposed by the contract created by the indorsement: Sections 5898 and 5899, L. O. L. A qualified indorsement constitutes the indorser a mere assignor of the title to the instrument, although Section 5871, L. O. L., declares that "such an indorsement does not impair the negotiable character of the instrument." If the purpose of the statute is merely to prevent the paper from permanently losing its negotiability, then that purpose is fully accomplished by a qualified indorsement. But it must be remembered that the statute does not specify the kind of indorsement. It must also be remembered that an unqualified indorse-

ment is in a certain sense unlimited while a qualified indorsement is limited. Again, it must be remembered that an unqualified indorsement is the one most used in the commercial world and the one which is generally expected by the transferee unless the parties have agreed to the contrary. At least two and possibly more writers have referred to *Seeley* v. *Reed* (C. C.), 28 Fed. 164, as authority for saying that a contract for the transfer of a note only carried with it the right to a qualified indorsement; but that case must be read in the light of the nature of the contract made between the parties, the relation which Reed sustained to the corporation, and the reason for making the notes of the corporation "payable to his own order"; and when the opinion is so read it cannot be treated as a precedent for holding that the transfer of an unindorsed note payable to order carried with it only the right to a qualified indorsement. In *Wade* v. *Guppinger et al.*, 60 Ind. 376, it was held that where one person agrees to transfer a note to another, the law implies that the transfer is to be made by indorsement, unless a different agreement is made by the parties, and that in the absence of an agreement to the contrary the transferee is entitled to a "simple indorsement"; and it was therefore decided that the party claiming that the transfer was to be by "indorsement without recourse or otherwise than by simple indorsement, has on him the burthen of so proving." We think that the doctrine approved in *Wade* v. *Guppinger* is consistent with legal principles and entirely in harmony with the use made of negotiable instruments in the commercial world.

If an unqualified indorsement may be considered as containing within it the whole sum of the rights capable of being given by the contract which results

from an indorsement, then a qualified indorsement must be deemed to confer only a portion of those rights. One embraces the whole sum; the other represents only a part of that sum. The statute gives the right to an indorsement without saying whether it shall be the whole sum or only a part; and therefore, as in the case of a contract, when the statute gives the right to an indorsement without naming the species, the law will imply an agreement for the whole sum rather than for only a part of the rights capable of being conferred by an indorsement, and this implication will prevail unless the party claiming to the contrary submits sufficient evidence to sustain his claim: *Wade* v. *Guppinger et al.,* 60 Ind. 376. Apparently assuming that Section 49 of the negotiable instruments law relentlessly commands an unqualified indorsement regardless of an agreement for a lesser indorsement, one critic of the negotiable instruments law has suggested the propriety of amending Section 49 so as to provide for a qualified indorsement. Another writer answers the criticism and urges that—

"It certainly does not follow that Section 49 requires an unqualified indorsement in every case, * * Section 49 does not specify any one kind of indorsement. In every case the transferee must go into a court of equity to compel an indorsement. Obviously he will be given the kind of an indorsement to which he is entitled. If the parties agreed that the transferrer was not to assume personal liability, an indorsement 'without recourse' gives the transferee all that he is entitled to by common sense, by equity or by Section 49'': Brannan's Neg. Inst. Law, 170, 259. See, also, 14 Harvard Law Review, 241; 41 American Law Register (N. S.), 437, 499, 561.

16. We think, therefore, that Section 5882, L. O. L., gives to the transferee the right to an unqualified in-

dorsement unless the parties agreed that the indorsement should be qualified.

17, 18. According to the amended complaint, the maker of the note authorized the bank to fill the blank and the inference is that both the maker and the bank intended that the blank should be so filled with the name of the bank, for the pleading declares that "it was intended * * to insert the name of the defendant." The note should have been filled pursuant to the authority so given and in accordance with the intention so entertained. When the bank delivered the note to the plaintiff it knew that she could not compel the maker to pay the note unless the name of the bank appeared as payee in the note; and, hence, in these circumstances, equity will hold that to be done which ought to be done and direct the note to be completed in conformity with the intention of the original parties: *Farmers' Loan & Trust Co.* v. *Brown,* 182 Iowa, 1044 (165 N. W. 70); *Hughes* v. *Nelson,* 29 N. J. Eq. 547, 550. Treating the note as one made payable to the order of the bank and treating the note as having been in that condition at the time of the transfer, the plaintiff would then by force of Section 5882, L. O. L., be entitled to the indorsement of the bank, and, moreover, she would be entitled to an unqualified indorsement unless there was an agreement to the contrary. We, of course, must not be understood to hold that the facts are as set forth in the amended complaint. We simply assumed, as we must, without deciding, that the facts are as related in the only pleading before us and our discussion has been based upon a mere assumption as to the facts.

The ruling of the trial court sustaining the demurrer was correct and it is affirmed; but the cause is remanded for the purpose of affording the plaintiff an

opportunity to amend her complaint, if she so desires, and thus enter a court of equity.

Modified and Remanded.

McBride, C. J., and Bean and Johns, JJ., concur.